Argued February 11, decided April 27, 1909.

## STATE *v.* COSS.

[101 Pac. 193.]

RAPE—EVIDENCE—CHARACTER OF ACCUSED.

1. In a prosecution for rape, it is competent to show acts of undue familiarity other than that charged in the indictment as tending to prove an adulterous disposition and the commission of the crime alleged.

INDICTMENT AND INFORMATION—VARIANCE—TIME OF OFFENSE.

2. In criminal prosecutions the date on which the crime is alleged to have been committed is immaterial, if the crime is shown to have been committed within the statute of limitations, unless accused attempts to prove an alibi or show that it was impossible for him to commit the crime at the time charged; but the prosecution must prove and rely on some particular act as constituting the crime, and accused cannot be convicted by evidence that he committed some other crime.

CRIMINAL LAW—TRIAL—REMARKS OF JUDGE.

3. The reply of the judge to a request for an exception by counsel for accused, indicating much irritation and impatience with counsel, may not be

of sufficient importance to warrant the reversal of a conviction; but, when a series of requests for exceptions are replied to in the same manner, the repetition is calculated to prejudice accused with the jury.

WITNESSES—CROSS-EXAMINATION—IMPEACHMENT.

4. Under Section 853, B. & C. Comp., before a witness can be impeached by evidence that he has made inconsistent statements at other times, the statements must be related to him, together with the times, places, and persons present, and he must be asked whether he made such statements; but the statute does not prevent cross-examination to test credibility concerning statements made out of court inconsistent with his testimoney without specifying times, places, or persons present.

RAPE—EVIDENCE—MOTIVE FOR PROSECUTION.

5. In a prosecution for rape, evidence that accused's divorced wife felt very bitter towards him, that she was actively assisting the prosecution, that she had given valuable presents to the prosecutrix after the information was filed, that a few days prior to the filing of the complaint she had called on the prosecutrix, stating that she understood prosecutrix was a discharged employee of accused, and had a long and earnest conversation with the prosecutrix; that a brother of accused, with whom the prosecutrix talked about the crime, and to whose attorney she first complained of the crime, was an enemy of accused; that the divorced wife came to the office of the district attorney with a letter from the brother, in which it was stated that they would join in sending the accused to the penitentiary; and that the night after the preliminary examination prosecutrix occupied a room at a hotel on the same floor with the divorced wife and the brother, is admissible as tending to show that the prosecution was instigated by the divorced wife and the brother, their feeling toward accused, and their association with and possible influence over prosecutrix.

From Jackson: HIERO K. HANNA, Judge.

The defendant, H. M. Coss, was tried and convicted of the crime of statutory rape, and from the sentence following such conviction, he appeals.     REVERSED.

For appellant there was a brief over the names of *Mr. William M. Colvig* and *Mr. Clarence L. Reames,* with an oral argument by *Mr. Reames.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney-General, *Mr. Benjamin F. Mulkey,* District Attorney, *Mr. Robert G. Smith,* and *Mr. E. E. Kelly,* with oral arguments by *Mr. Crawford* and *Mr. Mulkey.*

MR. JUSTICE BEAN delivered the opinion of the court.

The defendant was convicted of the crime of statutory rape on Carrie Staggs, a girl about 14 years of age. The indictment charges the crime to have been committed

on the 3d of June, 1908. The defendant denied his guilt and claimed that the charge was concocted by a divorced wife and a brother with whom he had had litigation. The evidence tended to show: That Miss Staggs was employed as a domestic in defendant's family for two or three months in the spring of 1908; that, at the time of her employment, defendant brought her from her home to his residence in a buggy, and while on the way tried to hug and kiss her and otherwise take improper liberties; that upon her arrival at his house he insisted that she should occupy a room which was isolated from the rest of the family, contrary to the wishes of his wife; that during her employment he would frequently go into the kitchen, while she was at work, and try to hug and kiss her, and put his hand, as she says, "where he hadn't ought to," and say things "that were not right"; that a night or two before the alleged commission of the crime relied upon by the prosecution for a conviction, he visited the room where she was sleeping, and made improper proposals to her, putting his hand under the bedding and on her person; that she pushed him away, and he left the room, and that was all that was done on that occasion; that a night or two later he again came to her bed, awakened her, put his hand on her throat, and threatened to choke her if she made any outcry, and thus accomplished his purpose; that he visited her room on the following night, but did nothing more than on his first visit. The prosecuting witness informed her sister the next day after the alleged commission of the crime that defendant had been coming to her room at night, and of his conduct on the first visit, but said nothing, at that time, about his having had sexual intercourse with her.

In August the defendant was arrested on an information, sworn to by the prosecuting witness, and held by a justice of peace to await the action of the grand jury, for the crime of an assault with intent to commit rape,

APRIL, 1909]       STATE v. COSS.          465

charged to have been committed on the 27th of June.
The prosecutrix was a witness at the preliminary exam-
ination and testified to facts tending to show that, about
the date alleged in the information, defendant came to
her room some time during the night, and placed his
hand on her person, but she pushed him away, and he
left the room and did not have improper relations with
her at the time.   She repeated this same statement to
the district attorney, while he was considering the matter
of having the defendant arrested, and to other parties,
both before and after the preliminary examination, and
it was not until about the time for the grant jury to
meet in September that she told any one that defendant
had, in fact, had improper relations with her.   Upon
the trial of defendant, under the present indictment, she
testified that the crime charged therein was committed
during the night of Wednesday before she quit working
for defendant, which would be on the 3d of June.   Upon
this point her testimony was positive and definite, both
on her direct and cross examination, and it seems to have
been conceded, throughout the trial, that the crime, if
committed at all, was committed on the date and at the
time alluded to.

The defendant denied his guilt and all the improper
acts charged against him by the prosecutrix, and gave
testimony tending to show: That on the night of the 3d
of June he was in attendance upon the Commercial Club
of Medford, in regard to a matter in which his daughter
was interested; that he returned home from the club
about 11 o'clock, and his wife and daughter were waiting
for him to ascertain the result of his visit; that they
talked the matter over for a time and then retired; that
he and his wife occupied the same bed; that it would
have been impossible for him to have gotten out of bed
and gone to the room occupied by prosecutrix without
the knowledge of his wife and daughter, and they both
testified that he did not do so.   The record contains a

great many assignments of error. It is not necessary, however, to notice them in detail. For the purpose of the decision on this appeal, they may be grouped substantially as follows: (1) The admission in evidence of improper acts and conduct of defendant, other than the one charged in the indictment, the refusal of the court to instruct the jury, at defendant's request, as to the effect that should be given to such testimony, and in instructing the jury in reference to the matter of the date on which the crime was alleged to have been committed; (2) improper remarks of the court made during the progress of the trial; (3) rejection of evidence, which, it is claimed, tended to show that the prosecution was inspired by the divorced wife and brother of defendant; and that the prosecutrix had, at their solicitation and under their influence, changed her story from that told by her to her sister and at the preliminary examination, to a charge of actual rape; (4) improper remarks of the district attorney in his closing argument to the jury.

1. The defendant requested the court to instruct the jury that:

"The defendant must be tried by you only on the specific charge specified in the indictment. He must be convicted of no other crime nor upon any other charge. You must confine your deliberations upon the whole evidence to the particular crime charged in the indictment, and if that crime has not been proven beyond a reasonable doubt, you must acquit the defendant."

And also that:

"The girl gave evidence of other assaults upon her by the defendant in addition to the one charged in the indictment. You are not to consider such evidence for any purpose, excepting as to what bearing it may have upon the truthfulness of the particular charge in this case."

These instructions were not only refused, but the court said to the jury that it was not necessary for the State to prove the absolute date on which the crime was com-

mitted, but that if it was committed some date certain, any time within a year prior to the finding of the indictment, it would be sufficient. The instructions requested ought, in our opinion, to have been given. It is competent in cases of this character to show acts of undue familiarity, other than that charged in the indictment, for the purpose of proving an adulterous disposition, and as tending to sustain the main allegation; but the prosecution is required to rely upon one specific act for a conviction, and the jury should be advised of that fact and instructed as to the use which can properly be made of the other evidence.

2. In criminal prosecutions the date upon which the crime is alleged to have been committed is immaterial, and it is sufficient if it is shown to have been committed at any time within the statute of limitations; but where, in prosecutions of this character, the defendant attempts to prove an abili or give in evidence facts tending to show that it was impossible for him to have committed the act with which he is charged and is on trial, it is error for the court to instruct the jury that the date is immaterial, and that it is sufficient if the defendant committed the crime at any time within the statute. While the prosecution is not required or compelled to prove that the crime was committed on the date alleged in the indictment, it is required to prove some particular act constituting the crime and to rely upon that for a conviction. If it selects some particular act, and the defendant meets the charge with evidence tending to show that it was impossible for him to have committed such act, the jury ought not to be permitted to find the defendant guilty, because it may believe, from the testimony, that he did, in fact, commit some other criminal act of a similar nature to that charged. *State* v. *King,* 50 Wash. 312 (97 Pac. 247) ; *State* v. *Neel,* 23 Utah, 541 (65 Pac. 494) ; *People* v. *Parks,* 133 Cal. 3; *People* v. *Williams,* 133 Cal. 165 (65 Pac. 323) ; *State* v. *Hilberg,* 22 Utah, 27 (61

Pac. 215) ; *People* v. *Flaherty,* 162 N. Y. 532 (57 N. E. 73). The enforcement of this rule was particularly important to the defendant in this case, because the prosecutrix had testified positively that the crime was committed on a certain night, and defendant had given evidence tending to show that it was impossible for him to have committed it at that time, and, unless he was guilty of the act charged, he ought not to have been convicted. The indictment charged but one act, and while it was not necessary for the State to prove that it was committed on the date stated in the indictment, it was important that all the jurors should agree upon the same particular act, and that the instructions be so framed as to confine their inquiry to that point.

3. During the progress of the trial, the court made several statements and remarks, in the presence and hearing of the jury, which, it is claimed by the defense, were prejudicial error. Objection was made, by the State, to counsel for the defense detailing, in his opening statement to the jury, an alleged conversation between the defendant and one Meader, on the ground that it was hearsay and immaterial. The objection was sustained, and defendant's counsel asked the court to permit an exception to the ruling, and the court replied:

"No, I won't, because you have already got it out. I think the statement should not have been made, though."

Counsel thereupon proceeded with his statement, when he was interrupted by the court, and the following occurred:

"The Court: 'Don't make any more argument. If you have any more statements to make to what you expect to prove, say it as briefly as possible. Don't take up all the afternoon with these arguments.'

"Mr. Reames: 'I would like an exception to the remark of the court.'

"The Court: 'I will not give you an exception.'

"Mr. Reames: 'If a dispute arises between the attorney and the court as to what transpires——'

"The Court: 'Take your seat, Mr. Reames.' "

Whereupon Mr. Reames sat down and after a moment arose and said:

"May I have an exception to that remark?"

The Court: "No."

Mr. Reames: "Will your honor allow me to prove by the testimony of three witnesses——"

The Court: "No, it all appears here in the record, and that is all the exception you need. I have listened here for a long time supposing you were going to close some time in the day."

Mr. Colvig: "Let the record show that we tried to get an exception, but the court said he would not grant it."

Mr. Mulkey (District Attorney) : "I would be glad if the court would permit them to make or complete their opening statement, but not to make an appeal to the jury, as they seemed to be doing in the argument of the case."

The Court: "I told him that if he had any further statement of what he expected to prove, he could make it."

Mr. Reames: "The point of the exception is, that the remark of the court took away from the jury the value of what I might say.

The Court: "I am not giving him any exception on what he is not entitled to."

No further opening statement by the defense was made, and the State proceeded with its testimony.

While defendant's counsel was interrogating the prosecutrix as to the time she told her sister of defendant's visit to her room, and whether it was on the next day after the crime charged in the indictment was alleged to have been committed, the State objected "to pinning the witness down to dates," when the matter was left open on direct examination. Whereupon the court said:

"I think you can straighten the matter up on re-examination. Of course, any witness is liable to be confused as to the dates."

Mr. Colvig asks an exception to the remark of the court.

The Court: "I shall allow them to do so, and I shall make remarks whenever I think it is necessary. I don't propose that any advantage shall be taken of a young witness like this, and pin her down to dates when she is not able to specify any dates."

Mr. Reames: "Will your honor allow us an exception to that remark?"

The Court: "You may take an exception to what I have said, but you are not entitled to any exceptions because I have not prevented you from asking any question. I said I would allow the State, if possible, to explain the matter by the evidence, so we may understand it, whether the girl is testifying to facts as you want them to appear or not."

Again, on cross-examination, she was asked, when she first told a Mr. Tull about defendant coming to her room on the 3d of June and placing his hand on her person. The State interposed an objection on the ground that it was not proper cross-examination, and thereupon the following occurred:

"The Court: 'Has she testified to anything of that kind?'

"Mr. Kelley: 'No, sir.'"

The court thereupon sustained the objection, and defendant asked and was allowed an exception.

Mr. Reames: "We would like to place in the record what the answer would be. We expect the answer will be, if the witness were permitted to answer, 'Some time about that time.'"

The Court: "You may ask her whether at any given time and place, giving the names of the persons present, whether she has made these statements."

Mr. Reames: "That is what I want to find out."

The Court: "You have no business to put out a drag net for it to find out."

Mr. Reames: "I wish an exception to the remark of the court."

The Court: "I won't give you an exception. It goes into the record, and if the Supreme Court wants to reverse the case on that, they can do so."

Again, she was asked on cross-examination where she passed the night after she swore to the information in the justice court charging defendant with an assault with intent to commit rape, and why she did not go to her own home. An objection was sustained to the question on the ground that it was not proper cross-examination. She was then asked if she did not go to the Moore Hotel in Medford. The State objected as not proper cross-examination, and irrelevant and immaterial, and thereupon the following occurred:

"The Court: 'I don't think it is proper cross-examination.'

"Mr. Reames: 'For the purpose of the record I desire to ask the question.'

"The Court: 'The way you start out with the question I think it is objectionable.'

"Mr. Reames: 'I am asking her now, if on the evening of the 1st of August, 1908, if she did not occupy a room in the Moore Hotel in the City of Medford, that she knows two other persons who are greatly interested in the prosecution of this case occupied rooms on that floor the same night?'"

The court sustained the objection, and thereupon defendant asked and was allowed an exception; the court saying:

"I won't take up the time with such nonsense. You know, if you are an attorney, that it is not proper cross-examination."

Mr. Reames: "Not even to show by the witness the motives of the prosecution?"

The Court: 'You can show it, but you can't ask the witness matters that she has not testified to and not matter of cross-examination. It don't make any difference whether she is prosecuting witness, or what she is, the same rule will apply."

Mr. Reames: "I desire an exception."

The Court: "Take your exception. The Supreme Court will tell you that you had no business to ask such questions."

Mr. Reames: "I ask an exception to that remark."

After the prosecutrix had testified that she verified two informations or complaints in the justice's court, and after they had both been admitted in evidence, she was asked whether they referred to the same transaction, and replied, "I think so." She was then asked, "Can you give me a fairer answer than that?" But before she replied the court requested to see the complaints, and after examining them said, "I think that answers sufficiently." Counsel for defendant remarked:

"Just so there will be no mistake about it on re-direct."

The Court: "I don't think it is necessary for her to be more positive than that."

Mr. Reames: "I would like an exception to that."

The Court: "I will not give you an exception."

Mr. Reames: "I would like to have an exception to the remark of the court."

The Court: "I will not give you an exception. Go on with the examination."

Mr. Reames: "I would like an exception to the remark of the court."

The Court: "I will take an exception to you pretty soon, if you don't go ahead with this."

Mr. Reames: "I would like an exception to that remark. I am certainly trying to be fair."

It appeared from the cross-examination of prosecutrix that she first laid the date of the alleged crime as June 27th, and so testified at the preliminary hearing in the justice's court, and before the grand jury; but during the examination of the case by the grand jury it developed that defendant was not at home on that date and would be able to prove an alibi. The witness, after being advised of this fact, was recalled by the grand jury and changed the date to the 3d of June. She was thereupon asked the following question:

"Now the person who told you this also told you that Mr. Coss had established before the grand jury positive proof by his sworn testimony that you were not employed as a domestic in his household on the 27th day of June."

The State objected, for the reason that the question was "evidently asked for the purpose of laying the foundation for an impeaching question, and there is no time, place, or persons present shown."

The Court: "That is true."

Mr. Reames: "We were not present at any of those times or places, and we can't fix the time and place."

The Court: "Then you have no business asking the question, because it is an impeaching question."

She was also asked concerning statements made by her to Mr. Kelley, one of the attorneys appearing for the State, and whether Kelley appeared for the State at the preliminary examination, and when she first told him about defendant's conduct. The State objected to all these questions, as immaterial, and the court sustained the objections, saying:

"There is no use taking up an hour or two laying the foundation and then not to lay it."

Mr. Reames: "I would if the objections were not sustained."

The Court: "If you know the time and place and persons present, ask her, and not ask this and that as to who were attorneys and who were not attorneys. If you want to ask her an impeaching question, put it straight, and she will get it."

The witness further testified that she first told Kelley after the preliminary examination, that she went to his office voluntarily, for that purpose, and then told him defendant came to her room and placed his hand upon her person; that she pushed him away, and he left the room, and that was all that occurred. She was then asked:

"How many times did you see Mr. Kelley after that, concerning the matter, if you know—more than a dozen?"
A. "I don't think so."

Q. "Well, about how many?"

To which question the State objected on the ground that it was immaterial, and "if they want to lay the foundation for proving any other statements made at any other time, they may do so." The objection was sustained and defendant allowed an exception. The witness testified that she was acquainted with Mrs. Meader, and went to work for her on the 6th of June, and continued until the 24th. She was then asked whether, before she quit work for Mrs. Meader, she had told any public officer, justice of peace, or district attorney, that defendant had ever done anything wrong to her. The State objected on the ground that it was immaterial and irrelevant, which objection was sustained; the court saying, "Wholly so." To which ruling defendant asked and was allowed an exception; the court saying:

"She wasn't called upon to tell any officer."

Mr. Reames asked an exception to that remark of the court.

The Court: "You will get full of exceptions after awhile."

Mr. Reames: "We except to that remark. I am just as courteous to the court as an attorney can be."

The Court: "You have asked many questions which you know as an attorney you are not entitled to ask. Go on with the evidence."

Mr. Reames: "I desire an exception to that remark."

The defendant was arrested about the 1st of August, and on that day, or about that time, he went to see the father of the prosecutrix, for the purpose, as the State claims, of inducing him, for a money consideration, to persuade the prosecutrix to leave the country or otherwise quash the proceedings. To rebut this testimony and show why he called upon the father of the prosecutrix, the defendant called as a witness H. T. Meader, and offered to show by him that the defendant went to see the father at his request or upon his suggestion.

The State objected to this testimony on the ground that it was irrelevant and immaterial, and, after defendant's counsel had stated what they expected to prove, the court said:

"I don't think it is competent evidence, but I am going to admit it. The jury will receive such evidence as is admitted by the court."

Mr. Reames: "We wish an exception to the remark of the court, as it takes away the value of the evidence."

The Court: "I have a right to express an opinion in regard to it, but if it interferes with you, I will sustain the objection, but let him answer the question asked him, and you may detail the particular instance, not detail the conversation between Coss and himself."

The remarks of the court, as thus set out, were unfortunate, and while it may be that no one of them, if standing alone, would be sufficient to reverse the judgment, yet, when taken together and as a whole, we are strongly impressed with the idea that the general effect would not have been other than harmful. They indicated an attitude of the court toward counsel for the defense and the manner in which they were conducting the case, which was calculated to prejudice their client with the jury, although evidently not so intended. It may be that the remarks, in a measure, were provoked by the conduct of the attorneys and the tediousness of the cross-examination of the prosecutrix, but this would not justify their utterance or destroy their effect upon the jury, for, as said by Mr. Justice THAYER, in *State* v. *Clements,* 15 Or. 237 (14 Pac. 410): "If there is any one virtue in the judicial mind entitled to superior excellence, it is patience to hear and determine matters involving the rights and liberties of those charged with the commission of a crime." No attempt was made by the court, in its instructions or otherwise, to correct any impressions the jury may have received from the statements, nor were the jury instructed to disregard them, and, on the whole, we are of the opinion that they were prejudicial error.

4. Moreover, they evince an erroneous view of the law, as to the rule governing the cross-examination of a witness, concerning statements made by him out of court, inconsistent with his testimony. It seems to have been the opinion that it was necessary in such a case to call the witness' attention to the time, place, and persons present, when the alleged statements were made. Before a witness can be impeached by evidence that he has made statements at other times inconsistent with his present testimony, the statements must be related to him with the circumstances of times, places, and persons present, and he must be asked whether he has made such statements, and, if so, allowed to explain them (Section 853, B. & C. Comp.) ; but this does not limit the right to cross-examine a witness for the purpose of testing his recollection or credibility. It is necessary to lay the ground for an impeachment when an attempt is subsequently made to provide inconsistent statements by independent evidence. If such is the purpose of the examination, the requirements of the statute must be observed, but not otherwise. A witness may be examined for the purpose of testing his credibility, concerning statements he has made, out of court, inconsistent with his testimony, without the particularity as to · the time, place, and persons present, required for the purpose of impeaching him, by showing that he has made such statements.

5. Mrs. Becht was the divorced wife of defendant, and James Coss was his brother. It is claimed by defendant that the prosecution was instigated by these parties, through spite and malice, and that it was through their influence that the prosecutrix had been induced to make the charge against defendant. During the cross-examination of prosecutrix, she testified that she knew Mrs. Becht, and she had been told that she was the divorced wife of defendant. She was then asked if she knew that a great feeling of enmity existed between Mrs. Becht

and defendant, and that Mrs. Becht was doing everything in her power to assist the prosecution, and whether, after she verified the information filed in the justice's court against defendant, Mrs. Becht had not given her some valuable presents, and if she did not have some of them on her person at the time; but the court sustained objections to all these questions and would not permit the witness to answer. The witness testified: That the first person she ever told that defendant had committed the crime of rape upon her was Mr. Kelley (the attorney for James Coss in some litigation he had with his brother, the defendant), and that was after the preliminary examination; that she saw and talked with James Coss, defendant's brother, a couple of times. She was then asked if she did not know from what James Coss told her that there was a feeling of great enmity existing between him and his brother; but the court sustained an objection thereto and would not permit the witness to answer. Mr. E. A. Reames, who was district attorney in June, 1908, was called by defendant, and an offer was made to show by him that during that month Mrs. Becht came to his office with a letter from James Coss, in which it was stated that they would join in sending defendant to the penitentiary, that both of these parties exhibited bitter feelings of hatred toward defendant, and Mrs. Becht's feelings were such that she continually said and muttered to himself:

"I will kill him. I can kill him. Yes, I can do it."

And she wanted to send him to the penitentiary, no matter what was the charge. Defendant also offered to show that at the time the information filed in the justice's court was sworn to by prosecutrix, and on the night after the preliminary examination, she was at the Moore Hotel with Mrs. Becht and Charles Tull, and occupied a room on the same floor; but the court refused to permit such testimony. Mrs. Erdman, one of defendant's witnesses, was sick and unable to appear at the trial, and it was

stipulated and admitted by the State, for the purpose of the trial, that, if present, she would testify:

"That upon a time, a few days prior to the first complaint that Carrie Staggs ever made to any public officer of any charge whatever of any crime or wrong against defendant, the Mrs. Becht, mentioned in the evidence as the divorced wife of the defendant, voluntarily came to the home of Mrs. Erdman and asked Mrs. Erdman to be allowed to talk with Carrie Staggs, as she understood that Carrie Staggs was a discharged employee of the defendant. That Carrie Staggs and this woman, Mrs. Becht, thereupon engaged in a long and earnest conversation. That the witness had no interest in the result of the trial. That the witness knows that Charles Tull, mentioned in the evidence, is now, and for more than three months has been, the private detective of the prosecution in this cause."

This stipulation of facts was offered in evidence the same as if the witness had been on the stand, but, on objection of the State, was excluded. The testimony, thus sought to be elicited, was, in our opinion, competent. It tended to sustain the defendant's contention that the prosecution was instigated by his divorced wife and brother, and to show their animosity and feeling toward defendant, the interest they were taking in the prosecution, their association with, and relation to, the prosecuting witness, and their possible influence over her.

During his argument to the jury, the district attorney said, among other things:

"I, as an officer of the State of Oregon, wish to assure you that if I didn't believe he was guilty of the crime I should not wish the thing prosecuted."

The defendant's counsel objected to these remarks, and the court ruled and stated to the jury that:

"It is not proper for the attorneys to state what their opinion is. They can draw their conclusion from the evidence. You are to form the opinion."

It is admitted that the remarks of the district attorney, referred to, were improper and should not have been

made; but, in view of the conclusions reached on other questions, which require a reversal of the judgment, it is not necessary to inquire whether their effect was or could be cured by the court.

It follows, from the views heretofore expressed, that the judgment must be reversed, and a new trial ordered.

REVERSED.