# THE STATE v. THOMAS McDONOUGH, Appellant.

### Division Two, February 7, 1911.

1. **INDICTMENT: Venue: Carnal Knowledge.** If the venue of the assault is properly laid and is also stated in the margin, the indictment is not insufficient for that there is no venue therein laid as to the averment of the carnal knowledge charged.

2. **PUNISHMENT: Verdict.** A verdict in the words, "We, the jury in the above entitled cause, find the defendant guilty of assault with intent to ravish, and assess the punishment at three years," is sufficient to support a judgment fixing defendant's punishment at three years' imprisonment in the penitentiary; for if it failed to declare the punishment, it fell within the provisions of the statute (R. S. 1909, sec. 5254) authorizing the court to fix it.

3. **INSTRUCTION: Defendant and Wife as Witnesses.** An instruction authorizing the jury to take into consideration the interest of defendant and his wife in the result of the trial, and their marital relation, in passing upon the credibility of their testimony, is not reversible error, but is approved.

4. **TESTIMONY: Incompetent: Detailed in Absence of Jury: Withdrawal by Instruction.** When incompetent and harmful statements come into a criminal case, wherein the defendant is charged with a low offense involving moral turpitude, the prudent course is to exclude the jury until the competency of the proffered testimony can be determined; and if admitted, it is extremely doubtful whether the impression made on the minds of the jury can be neutralized by an instruction.

5. **———: Conversations: Hearsay.** A conversation between the wife of defendant and the mother of prosecutrix, in a carnal knowledge case, in which is discussed the character of defendant, in his absence, is hearsay, and is not competent unless offered for the purpose of impeaching one or the other as a witness.

6. **———: Wife as Witness: Matters Not Referred to in Chief: Good Character.** On cross-examination of the wife of defendant, he being on trial for carnal knowledge of a little girl, she was asked by the State. "How many times have you and your husband been separated during that time?" No reference to the separation from her husband had been made in her examination in chief. *Held*, first, that the statute confers upon the wife the same immunity from cross-examination beyond the scope of the direct examination that it confers upon her

husband on trial, and she cannot be cross-examined when called as a witness for him about matters not referred to in her examination in chief; and, second, the evidence was not competent on the issue of good character, because the character of a defendant on trial cannot be assailed by the State by proof of specific acts of wrongdoing.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields*, Judge.

REVERSED AND REMANDED.

*Thos. B. Harvey* for appellant; *Mat Holland* of counsel.

(1)   It is error for an instruction to single out the defendant, or his wife, or any other witness, and practically warn the jury against the testimony of such witness. Stetzler v. Railroad, 210 Mo. 712; Zander v. Railroad, 206 Mo. 461; Huff v. Railroad, 213 Mo. 515; Montgomery v. Railroad, 181 Mo. 477; Connor v. Railroad, 181 Mo. 415; Shepard v. Railroad, 189 Mo. 362. (2)   The court erred in permitting Mrs. Mansfield to narrate a conversation between her and Mrs. McDonough, harmful to the defendant, and not in his presence, and no part of said conversation having been asked for by defendant in his cross-examination. Such testimony is merely hearsay. And even if part thereof had been asked for by the defendant, the State would be entitled only to all of it on the same subject-matter. 3 Wigmore on Evidence, sec. 2115. (3)   A fact cannot be established by asking a witness if he did not state to a certain person and at a certain time that the thing had occurred. (4)   The erroneous admission of harmful testimony cannot be cured by withdrawing it from the consideration of the jury, and particularly when the court has been advised beforehand of the character of the evidence sought to be elicited. State v. Bateman, 198 Mo. 222; State v.

Thomas, 99 Mo. 257; State v. Fredericks, 85 Mo. 145; State v. Hopper, 71 Mo. 425; State v. Daubert, 42 Mo. 242; State v. Mix, 15 Mo. 153. (5) A verdict which is insufficient to support a judgment can be cured only by an assessment by the court of the minimum punishment for the offense. State v. Van Wye, 136 Mo. 243; State v. King, 194 Mo. 484; State v. Gordon, 153 Mo. 576; State v. Thornhill, 174 Mo. 372. (6) A child only six years of age and who admits that she is stating whatever her mother has told her to say, and who says that if she testifies falsely she will go to the bad place only because her mother and the prosecuting attorney had told her to so state, is not a competent witness. (7) The evidence was insufficient to sustain the verdict and the demurrer thereto should have been sustained. State v. Goodale, 210 Mo. 275; State v. Crabtree, 170 Mo. 642.

*Elliott W. Major*, Attorney-General, and *James T. Blair*, Assistant Attorney-General, for the State.

(1) The verdict was sufficient to support the judgment. R. S. 1909, sec. 5254. This verdict can be criticised only when it is assumed that the omission of the words "in the penitentiary" amounts to a failure to fix the punishment. The jury found the defendant guilty, and either the verdict fixed the punishment, or it did not. If it did, the sentence conforms to it. If it did not, the court had the right to fix the punishment and did so under its statutory authority. Sec. 5254, R. S. 1909; State v. Dalton, 106 Mo. 468; State v. Dennison, 108 Mo. 543; State v. Foster, 115 Mo. 450; State v. Hamey, 168 Mo. 195; State v. King, 194 Mo. 484; State v. Ammons, 220 Mo. 8; State v. Thornhill, 174 Mo. 371; State v. Van Wye, 136 Mo. 243; State v. Rollins, 226 Mo. 538. In case of defective verdict the court is not required to assess the

minimum penalty. R. S. 1909, sec. 5254; State v. Emery, 76 Mo. 350; Fooxe v. State, 7 Mo. 502. It is required to assess the minimum only where the punishment assessed by the jury is below the legal limit. R. S. 1909, sec. 5255. Nor is the verdict assailable on the ground that it is for an offense not included in the indictment. State v. Dalton, 106 Mo. 469; State v. Frank, 103 Mo. 122; State v. Headley, 224 Mo. 179. (2) The testimony of the child, of the mother, and of the nurse and doctor, was sufficient on which to ground the conviction in this case, under all the circumstances. This court one year ago affirmed a judgment in a case in which the evidence was not wholly unlike the evidence in the case at bar. State v. Headley, 224 Mo. 180. It is true that in this case the State's evidence discloses some inherent weaknesses and some apparent contradictions, besides being contradicted in many respects by the evidence of the defense. These things, however, go solely to the credibility of the evidence, and that was for the jury. State v. Headley, 224 Mo. 190. The following cases also indicate that the evidence here was sufficient. State v. Shroyer, 104 Mo. 446; State v. Smith, 80 Mo. 518. (3) (a) The question as to the competency of the child, Virginia Mansfield, was settled against appellant by the trial court and "is not open to review unless there be a clear abuse of judicial discretion," or the witness was admitted "upon an erroneous view of a legal principle." State v. Headley, 224 Mo. 189. The ruling of the trial court falls within neither of the exceptions mentioned. Her credibility as a witness was for the jury, after the court held her competent. Appellant cites no cases in support of his contention that the child was not competent. (b) Appellant complains of the admission of the testimony of Mrs. Mansfield as to a conversation between her and the wife of the appellant. This conversation was not mentioned in the State's direct.

examination of Mrs. Mansfield. On re-direct examination the assistant circuit attorney asked Mrs. Mansfield to detail the conversation between herself and Mrs. McDonough, which occurred at the Mansfield home. Appellant's counsel permitted the witness to answer in part and then interjected: "Well, here: I don't think the conversations between the women are competent—what she may have said to Mrs. McDonough, warning her about her husband or making complaints to her." This was the objection, and it was made after that part of the conversation to which it was applicable was in. It could not serve a higher function than a motion to strike out, so far as that part of the conversation was concerned. And motions to strike out are not favored. State v. Forsha, 190 Mo. 326. Besides, the objection was not broad enough to raise the question attempted to be presented by counsel here, State v. Young, 153 Mo. 449, unless the court's ruling can be said to fall within the principle laid down in State v. Huff, 161 Mo. 490. But, aside from all questions of procedure, the record shows that appellant's counsel called for a part of the conversation on cross-examination. The cross-examination entitle the State to prove the conversation. Burghart v. Brown, 51 Mo. 601; 3 Wigmore on Ev., sec. 2094 (2), 2114 (4), 2115. It is necessary to concede that had a sufficiently specific and comprehensive objection been made, the trial court went quite as far as it could without error. But this judgment cannot be reversed on the admission of this testimony under the circumstances disclosed by the record and the authorities cited above. Besides, the court directed the jury to disregard that portion of the conversation on which the complaint here is really grounded. Counsel conceded in the trial court that "if it is a conversation about the same subject-matter, that is all open." He cannot complain that the trial court took him at his

word. Another ruling urged as error was that with respect to the cross-examination of appellant's wife concerning the number of times she and her husband separated during their married life. Just what this testimony had to do with the case is not apparent to us. However, it is not at all obvious that it was harmful to appellant. Counsel characterize it as "erroneous" and "flagrant" and "harmful," but do not point out how it could have injured appellant. It is not every admission of incompetent testimony that is ground for reversal. State v. Howard, 102 Mo. 148; State v. Jennings, 18 Mo. 439; State v. Barrington, 198 Mo. 81. Further, the trial court withdrew the evidence from the consideration of the jury. Under the circumstances this would seem sufficient in this case, as it was held to be in State v. Bateman, 198 Mo. 221; State v. Hopper, 71 Mo. 429. (4) The only instructions criticised in appellant's brief are those relative to the weight to be given the testimony of the appellant and his wife. The instruction is, as counsel for appellant concede, a rescript of one approved in State v. Napper, 141 Mo. 407. We are not unwilling to admit that there is much to be said in support of the position taken by appellant's counsel and some of the judges of this court, that the principle of this instruction is bad. State v. Barrington, 198 Mo. 126; State v. Young, 99 Mo. 680. It does, at times, seem a little illogical for trial courts to say, in effect, to juries: "The indictment is a mere formal charge and is not to be taken as any evidence of defendant's guilt," but "you will (or may) consider the fact that he is the defendant" (that he is indicted), . . . in passing on the credibility of his testimony." But since the Maguire case, this court has approved this instruction as to the defendant and that given in this case is open to no criticism to which the other might not justly be subjected. It comes here in practically every trans-

cript in a criminal case. The authorities approving it in principle are conceded by counsel for appellant to be numerous. It has been intimated by this court that while section 5242 is an enabling statute, it attaches to testimony which would, without the statute, be wholly incompetent, the infirmity pointed out to the jury in the instruction given. On this theory, the remedy must be applied by the Legislature and cannot be obtained in this court.

KENNISH, P. J.—The defendant was indicted in the city of St. Louis, charged with the crime of rape upon Virginia Mansfield, a female child under the age of fourteen years. Upon a plea of not guilty, he was tried and convicted of the offense of assault with intent to ravish, and his punishment assessed at imprisonment in the penitentiary for three years. Judgment was pronounced in accordance with the verdict and after taking the proper steps he appealed to this court.

The evidence for the State tended to prove the following facts:

At the time of the offense charged the defendant, a married man with a family consisting of a wife and two small children, was engaged in the business of keeping a small grocery store and saloon in the city of St. Louis. He resided across the street from the store. Mrs. Mansfield, mother of the prosecutrix, her mother Mrs. Stanton, the prosecutrix and her sister, resided near the store and residence of the defendant. The prosecutrix was six years of age and her sister about two years older. The Mansfield children and the two small children of the defendant played together. On the day of the alleged crime the defendant, as was his custom, went to his residence in the middle of the afternoon to take a nap, leaving the store in charge of his wife, so that he could return and keep his place open

until late at night.   About five-thirty o'clock in the afternoon of June 25, 1908, the children were playing on the defendant's porch, and he called the prosecutrix and his own four-year old girl into his room.   The prosecutrix testified that the defendant laid her on the bed alongside of him, took down her panties, placed his hand on her private parts and hurt her.   The defendant's little girl was in the room at the time.   The prosecutrix then went with the defendant's daughter to get a bucket of ice cream, and, being called by her sister, went home to her supper.   Mrs. Mansfield testified that the prosecutrix was sobbing and crying when she came home and that upon being asked to tell what was the matter, related her mistreatment by the defendant.   Mrs. Mansfield immediately examined her daughter and found her private parts contused and swollen and found some traces of blood.   About two or three hours thereafter Mrs. Mansfield and her mother went to the defendant's store and, in the presence of his wife, accused him of mistreating the little girl. He denied any knowledge of the alleged misconduct and, after his accusers had left, sent his wife to the Mansfield home to learn the facts as to the charges made.   Two days thereafter Mrs. Mansfield, accompanied by a midwife, took the prosecutrix to a physician, who found the parts somewhat bruised and inflamed on the inside.   The physician and the midwife testified as to the child's injuries.

The defendant and his wife testified in his behalf and denied the incriminating facts testified to by the witnesses for the State.   Other witnesses for the defendant testified to statements made by Mrs. Mansfield, soon after the date of the alleged crime, in conflict with her testimony at the trial.   The defendant introduced evidence of good character and, although questions were asked his character witnesses on cross-examination, indicating that defendant was not of good char-

acter, no evidence was offered by the State upon that issue. Other facts in evidence will be referred to in the opinion.

I. Omitting formal parts, the indictment is as follows:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court, duly impaneled, sworn and charged, upon their oaths present, That Thomas McDonough on the twenty-fifth day of June, one thousand nine hundred and eight, at the city of St. Louis aforesaid, in and upon Virginia Mansfield, a female child under the age of fourteen years; to-wit, of the age of six years, unlawfully and feloniously did make an assault, and her, the said Virginia Mansfield, unlawfully and feloniously did carnally know and abuse; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

Appellant assails the indictment as insufficient on the ground that while the venue of the assault is properly laid and is also stated in the margin, there is no venue laid as to the averment of carnal knowledge.

It is provided by section 5107, Revised Statutes 1909, that, "It shall not.be necessary to state any venue in the body of any indictment or information;. but the county or other jurisdiction named .in the margin thereof shall be taken to be the venue for all the facts stated in the body of the same." And section 5115 provides: "No indictment or. information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected . . . for want of a proper or perfect venue; nor for want of any venue at all." Under these statutes, as construed in the following decisions, we hold the indictment sufficient against the attack made upon it, and that this point in appellant's brief is without merit. [State v. Simon, 50 Mo. 370; State

v. Dawson, 90 Mo. 149; State v. Brown, 159 Mo. 646; State v. Hughes, 82 Mo. 86.]

II.  Appellant contends that the verdict is insufficient to support the judgment.  It is as follows:  "We, the jury in the above entitled cause, find the defendant guilty of assault with intent to ravish, and assess the punishment at three years.  F. Westman, Foreman."

Section 5254, Revised Statutes 1909, provides: "Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, or assess a punishment not authorized by law, and in all cases of judgment by confession, the court shall assess and declare the punishment, and render judgment accordingly."

It is apparent that if the verdict in this case failed to declare the punishment, it fell within the provisions of the foregoing statute, and the punishment was properly fixed by the judgment of the court.  On the other hand, if it sufficiently declared the punishment, it is not open to the objection made.

III.  Instruction numbered 11 is in the usual form and authorized the jury to take into consideration the interest of the defendant and his wife in the result of the trial, and their marital relation, in passing on the credibility of their testimony.

Appellant vigorously assails this instruction as wrong in principle and urges that it should not longer receive the approval of this court.  This instruction has been given in criminal cases in the courts of this State for over thirty years.  It has been considered and approved by this court in many cases and we are unwilling to hold that the trial court committed reversible error in giving it in this case.  [State v. Maguire, 69 Mo. 197; State v. Boyer, 232 Mo. 267; State v. Dilts, 191 Mo. 665, and cases cited.]

IV.  After Mrs. Mansfield and her mother had returned from defendant's store to their home, Mrs. McDonough, the wife of the defendant, went to the Mansfield home, at her husband's suggestion, to learn the facts about the trouble.  Mrs. Mansfield testified that she sent for Mrs. McDonough, and that the latter came to her house in response to the request.  When Mrs. Mansfield was on the witness stand as a witness for the State, and while the State was making its case in chief, she was asked, on cross-examination, if Mrs. McDonough came to her home that night, and she answered in the affirmative.  After explaining where her children were when Mrs. McDonough arrived, she was asked: "Let me ask you and refresh your memory possibly in this way; don't you remember Mrs. McDonough asked you to let her see the little child and you said you would and called her in?"  To which the witness answered: "No, sir.  She didn't ask me to examine her.  We wanted her to tell the story, but Virginia refused and would not do it.  I asked her and pleaded with her to tell Mrs. McDonough, but she said she would not do it."

Invoking the principle of law that when a part of a conversation is drawn out in evidence the adversary is entitled to the whole utterance, the prosecuting attorney, on redirect examination, asked the witness to "tell the jury all the conversation you had with Mrs. McDonough when you sent for her and she came over to your house."  The witness answered: "Yes, sir.  Well, she came over and she was crying, and I told her—I said, 'Mrs. McDonough, I want to warn you.  You have two little girls there yourself . . . . .' "

Objection was here made by counsel for the defendant to the testimony of the witness, which objection was argued to the court at length, and the court ruled that the question was competent.  The witness then continued: "I said 'Mrs. McDonough, I want to

warn you.' I said, 'You have two little girls of your own over there. You never trust them under his hands.' I said, 'Because when he has done that to my little girl he will do it to yours.' She said she knew he was low, but she never thought he would do like that. She said, 'If I had been a woman of the half world he couldn't have treated me worse than he did with disrespect and with every abuse in the world. Many a night I have had to sit out on the front steps for fear he would shoot me.' " Upon objection by the defendant, the court ruled: "Conversation with regard to this offense is competent. Conversation with regard to other matters is not." Counsel for defendant then objected that, "The conversation, as it turned out, was altogether about other matters." To which the court replied and ruled as follows: "No, it was not. It was about her warning her against McDonough doing the same thing to her little girl, and referred to the fact of her having treated her little girl this way. That part of the conversation is about this matter. What she said about matters that took place between herself and her husband before that is not competent. I so rule and instruct the jury to disregard that part of the conversation." The defendant saved his exceptions.

If the foregoing ruling of the court is the law, then the State, in a criminal case, even in a capital case, may have repeated to the jury, as evidence in support of the charge, the talk of two women, out of court and not in the presence of the defendant, in which they agree in advance of the jury that the defendant is guilty of the offense charged, as well as of many other offenses in no manner connected with the case on trial. While the court told the jury, after this evidence was in, that they should not consider the conversation as to the other offenses of the defendant, testified to by Mrs. Mansfield, it is questionable whether

the effect of such an instruction is not of theoretical rather than of practical efficacy.

Before taking up the main question involved in the ruling now under consideration, reference should be made in passing to the practice, not uncommon in the courts, of hearing in the presence of the jury the evidence upon the competency of a witness or of testimony offered, in cases as the one in hand, where the testimony may have an influence upon the minds of the jury, and, if found incompetent, attempting to withdraw its effect by an instruction or direction to the jury.

In the trial of a criminal case, and especially in a case involving such moral turpitude and of such revolting character as that for which defendant was on trial, the jurors come into the case with very decided views upon the subjects necessarily discussed in the testimony of the witnesses, and when statements are made by the witnesses which are harmful and incompetent under the rules of evidence, it is extremely doubtful if the impressions made upon the minds of the jury can be neutralized by an instruction or direction of the court. There is no difficulty in obviating any danger of injustice to the accused by settling such matters in the absence of the jury. This course may require a little additional time, but the predominant importance of vouchsafing to the accused a fair trial, upon competent testimony only, fully justifies the propriety of the course suggested, and which, in fact, is generally followed by the courts.

In the case of State v. Witherspoon, 231 Mo. 706, this court said: "When, in the course of a trial, a question is raised as to the competency of a witness, and the circumstances of the case are such that the *voir dire* examination of the witness by the court may have an influence on the minds of the jury upon the issues before them, this court has commended it as a wise and

judicious course of procedure that the jury be retired from the courtroom pending such examination. [Stetzler v. Railroad, 210 Mo. l. c. 709.]''

Was the whole utterance, the entire conversation of Mrs. Mansfield and Mrs. McDonough, admissible in evidence against the defendant?

Neither of these persons engaged in the conversation was a party to the cause, and under the well recognized general rules of evidence any statement made by either out of court in the absence of the defendant was hearsay and not admissible except in the case of impeachment. It seems to be conceded by appellant upon this point that the State was entitled to the whole conversation between the two women to the extent and so far as it dealt with the particular matter brought out on cross-examination by the defendant. But upon what theory was the principle invoked by the State applicable in this case? Mrs. Mansfield was merely a witness and her statements out of court were hearsay. No ground was laid for her impeachment. It was clearly competent for the defense to impeach her by proving prior statements in conflict with her testimony, and in such case it would have been competent for the State to have offered evidence of former statements in harmony with her testimony, but that is not this case.

The rule of law under consideration, as applied to conversations, is limited to admissions and declarations of parties to the cause, and only in exceptional cases has it ever been applied to third parties. The principle is stated in 3 Wigmore on Evidence, section 2115, as follows: ''The general phrasing of the principle, then, is that when any part of an oral statement has been put in evidence by one party, the opponent may afterwards on cross-examination or re-examination, put in the remainder of what was said on the same subject at the same time. This phrasing leaves

something to be desired in definiteness, but it is practically applied without much difficulty and with little or no quibbling. Its most common application is to conversations in general, including the admissions of an opponent and to inconsistent statements of a witness used in impeachment; here it may be noted that a conversation in a party's presence is in effect merely one form of an admission, because statements in a party's presence are usually equivalent to admissions by him."

There is a striking analogy in the facts and questions of law presented, between the case of People v. Flaherty, 162 N. Y. 532, and the case at bar. In that case the defendant was convicted of the crime of having sexual intercourse with a female under the age of sixteen years. The prosecutrix was Marie Sweeney. She first told the Skillen family of her trouble. Jennie Skillen was a witness for the people. The court, through PARKER, C. J., l. c. 544, discussing the questions raised upon her testimony, said: "Now the district attorney having brought out the fact that the accusation against the defendant by Marie Sweeney was first made to the Skillen family, the defendant sought to show on cross-examination that Jennie Skillen had first suggested the name of Father Flaherty to Marie Sweeney as the author of her misfortune. Counsel said, 'Didn't you say to her, "Wasn't it Father Flaherty?" and she said "yes?" A. No, sir, I did not. Q. How did you say that? A. As near as I can remember I asked her who she had been with. She didn't answer. I said "Marie, you know and I know you have been with some one, and I want you to tell me who the author of your trouble is." She wouldn't tell me. Q. I only ask you for the question and the answer, the time when the name of Father Flaherty was used; what did you say and what did she say? A. I said "Who was it?" . . . She

then said it was Father Flaherty. Q. And that was the first mention she made of the name of Father Flaherty in the matter? A. Yes, sir.' This was all of the cross-examination on that subject. The counsel for the people then put the question which, after referring to the statement of Marie Sweeney that Father Flaherty was responsible for her condition, concluded as follows: 'Did she give you any reason why she had intercourse with him?' These reasons were not competent as evidence prior to the cross-examination of the witness, nor were they made either necessary or competent by that cross-examination. This was not a case where a part of a conversation being given, the rest was needed in order to present the situation fairly; nor did the question call for the rest of the conversation, but instead it asked for the reasons only, and they were not competent as evidence for any purpose; nor is there even excuse for suggesting that they were made so by the fact that the hearsay declarations of the complainant as to the name of the person responsible for her condition was perhaps drawn out by the defendant instead of the people.''

We are of opinion that the court committed reversible error in permitting Mrs. Mansfield, over the objections of the defendant, to give in evidence to the jury, the alleged conversation with the defendant's wife.

VI. On the cross-examination of the defendant's wife she was asked by counsel for the State: ''How many times have you and Mr. McDonough been separated during that time?'' No reference to her separation from her husband was made in her examination in chief. Upon objection that the cross-examination was improper because that matter was not referred to in chief, the court ruled that only the defendant was protected in so limiting the cross-examination, and that the evidence was competent on the issue of good

character.  This ruling of the court was clearly erro-
neous, and cannot be sustained upon either of the rea-
sons assigned.  The first reason given is wrong, be-
cause the statute confers upon the wife the same im-
munity from cross-examination beyond the scope of
her direct examination, as in the case of the husband
on trial.  [R. S. 1909, sec. 5242.]

The ruling cannot be sustained on the second
ground for the reason that the character of the de-
fendant on trial cannot be assailed by the State by the
proof of specific acts of wrongdoing.  [State v. Bulla,
89 Mo. 595; State v. Lockett, 168 Mo. 480; Kelley's
Crim. Law and Prac., sec. 252.]

There are other alleged errors presented in appel-
lant's brief, but because of the disposition to be made
of this case we do not deem it necessary to pass upon
them.

We are of the opinion that prejudicial error was
committed against the defendant.  The cause is, there-
fore, reversed and remanded for a new trial.  *Ferriss*
and *Brown, JJ.,* concur.