STATE of Missouri, Respondent,

v.

Rolland HOOPER, Appellant.

No. 56779.

Supreme Court of Missouri,
Division No. 1.

May 14, 1973.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Neale, Newman, Bradshaw & Freeman, Thom G. Field, Leland L. Gannaway, Springfield, for appellant.

BARDGETT, Judge.

Rolland Hooper was charged by amended information under the Second Offender Act, § 556.280, V.A.M.S., with having been convicted of a prior felony and the offenses of burglary in the second degree and stealing. The stealing charge was dismissed prior to submission to the jury and the jury found defendant guilty of burgla-

ry in the second degree, a felony. The court sentenced defendant to four years in the Department of Corrections. Defendant filed his notice of appeal prior to January 1, 1972. This court has jurisdiction. Mo. Const., Art. V, § 31(4), V.A.M.S., as amended 1970.

Hester Williams testified in the state's case. She was the owner of the Rainbow Inn, a beer tavern in Greene County, Missouri, on August 9–10, 1970, and prior thereto. August 9, 1970, was a Sunday and she worked at the Rainbow Inn during that day and left about 8:00 or 9:00 p. m., returning sometime after 11:00 p. m. The witness stated that defendant had been in the Rainbow Inn sometime prior to 8:00 p. m., and she saw him again at another tavern, The Cave, around 10:00 or 10:30 p. m. She was at the Rainbow Inn when it closed at about 12:30 to 1:00 a. m. on August 10, and stated that she was present when the doors were locked, although an employee, Barbara Pierce, actually locked up the building. There are three doors to the Rainbow—one of them is on the northeast side of the Rainbow and is used for deliveries. The witness testified that this door opens to the inside and was securely latched when the tavern closed. This is the door through which the burglars later entered. About 3:00 a. m., on August 10, 1970, she received a call from the police and returned to the Rainbow. The northeast door was open and the latch or bar was hanging down. The door had not been smashed in and the hinges were intact. No damage had been done to the door. There were cigarettes in a sack by the door and other cigarettes in front of the cigarette machine.

Clifford Maynard testified that he lived about sixty to seventy yards antigoglin from the Rainbow Inn. He was sitting on his front porch in the late evening hours of August 9 and early morning hours of August 10, 1970. There were one or two lights near the Rainbow Inn. About 1:30 a. m. on August 10, 1970, he saw a car approach from the west and pull off the road and stop next to the Rainbow Inn on the opposite side of some bushes. It was a 1956 or 1957 Plymouth. The bushes blocked his view of the car, but he saw a man come from where the car was parked, go to the northeast door of the Rainbow, push the door open, and enter the building. The witness called the police. There was one other car parked in front of the Rainbow. The witness returned to the porch and saw the police car go by, but it didn't stop. As the police car went by Maynard saw a second man come from where the Plymouth was parked, go to the northeast door, and holler something into the building. Then the men came out with a sack or something and they ran around the side of the building. The police then returned to the Rainbow.

Several police officers testified. The substance of their testimony was that they received a call from headquarters at about 1:49 a. m. and proceeded to the Rainbow, arriving there a few minutes later. The police car was headed west and it drove by the Rainbow about one block, turned around, and came back. The 1956 Plymouth was parked just east of the Inn. They apprehended Bob Raby as he was walking hurriedly toward a bushy area at the rear of the building. The police then went into the Rainbow through the open northeast door. There was a paper sack at the side of the door that contained assorted packages of cigarettes; the front cover of the cigarette machine had been pried off and the coin box and several packages of cigarettes were on the floor. The officers then checked the field south of the building and found defendant lying face down in the grass about 35 or 40 feet from the building. Assorted cigarettes and coins were found between the '56 Plymouth and the place where defendant was found. There were no fresh pry marks or other damage to the northeast door.

Defendant did not testify.

Robert Lee Raby testified in defendant's case. He stated that on August 9, 1970, he

and defendant were together all day and all evening into the early morning hours of August 10, 1970. At about 1:00 a. m., on August 10, they left the College Tavern and went to the Little Reno, arriving there about 1:30 a. m., but it was closed. They then started for Seven Gables restaurant and, as they passed the Rainbow Inn, Raby noticed the northeast door was slightly ajar. Raby suggested they go back to the Rainbow and look around. Defendant turned the car around and proceeded to the Rainbow. He saw Ethel Beesley's car parked there. Beesley worked at the Rainbow. Raby got out of the car and went into the Rainbow to see what was going on and called for Ethel. No one was there so Raby left the building, and as he was walking to the car the police arrived. The northeast door was open two to four inches when he arrived at the Rainbow. Defendant never came to the door of the building. As Raby left the building, defendant was standing by the car and immediately took off running. At first Raby did not know why defendant ran off, but then the police arrived.

Hooper and Raby were jointly charged by information with burglary in the second degree, and subsequently Raby filed a motion for severance which was sustained.

Defendant's first point is: "The trial court erred and the defendant was prejudiced by the giving of Instruction No. 6 which reads as follows: 'The court instructs the jury that all persons are equally guilty who act together with a common intent and purpose in the commission of a crime, and that a crime so committed by two or more persons acting jointly is the act of both and each so acting.' "

Defendant's motion for new trial stated that the court erred "1. In giving the jury Instruction Number 6 which reads as follows: (here the instruction was set forth in the same words as stated above)."

Rule 27.20, V.A.M.R., derived from § 547.030, RSMo 1969, requires that the specific grounds or causes for the alleged trial

error must be set forth. With reference to the motion for new trial, the court held in State v. Whitaker, 312 S.W.2d 34, 37–38 (Mo.1958), that " '[a]n assignment which merely states that the court erred in giving a particular instruction, or in refusing to give a particular instruction, or in refusing to instruct on a particular matter such as murder in the second degree have been held insufficient in not stating "in detail and with particularity" the specific grounds or causes of complaint in the motion for a new trial,' " and preserves nothing for review. Nor did the defendant make any specific objections to any of the instructions given by the court during the trial of the cause.

■ Defendant's first point on this appeal was not preserved for review in the circuit court either at trial or in the motion for new trial and is therefore overruled.

Defendant's second point is that the state failed to make a submissible case in that: (1) the state was required to prove that defendant entered the building and failed to do so; (2) Raby had been previously acquitted of the charge of burglary arising out of this same incident and therefore the evidence of Raby's acts could not be imputed to defendant; and (3) the state failed to prove anything inside the Rainbow Inn was carried away.

■ If defendant and his companion were acting together, it would not be necessary to show that defendant entered the building to make a submissible case of burglary in the second degree. State v. Whitaker, 275 S.W.2d 316, 320 (Mo. 1955).

There is nothing in the record on appeal in this case that indicates that Raby was previously acquitted of this burglary. There is only one place in the record on appeal where any mention is made of an acquittal of Raby, and that is point two of defendant's motion for new trial, where defendant contends the court erred in refusing to allow defendant to introduce evi-

dence of the judgment of acquittal of Raby. Nowhere from the beginning of the trial to the filing of the motion for new trial is the acquittal of Raby even mentioned. The state, in its brief, agrees that Raby had been acquitted.

The previous acquittal was not offered in evidence and there was no objection at trial to the testimony of the various witnesses as to the acts of Raby. The record reflects nothing with respect to the prior trial of Raby. In these circumstances the court cannot say, as a matter of law, that the evidence of the acts of defendant's companion could not be considered by the jury in determining whether or not defendant was guilty of the charge of burglary in the second degree.

It is not essential to the crime of burglary in the second degree that the state prove that anything was actually taken from the building. State v. Whitaker, 275 S.W.2d 316, 319 (Mo.1955). Nevertheless, in the instant case there was sufficient evidence from which the jury could find that the burglars did take several packages of cigarettes and dropped them outside the building.

Defendant contends that there was insufficient circumstantial evidence to support a verdict of guilty of burglary in the second degree. The evidence must be considered in the light most favorable to the verdict, and the major portion of the evidence has been stated above. The court holds that there was sufficient circumstantial evidence from which the jury could, with reason, find that defendant and his companion went to the Rainbow Inn together, that defendant's companion pushed open the door and entered the building, that the cigarette machine was broken into and packages of cigarettes were taken therefrom and carried outside the building, that when defendant saw the police car pass by he went to the building to warn Raby, that defendant then fled for fear of being caught by the police, and that in doing the foregoing defendant and his companion were acting together with the common intent of committing burglary. There was sufficient evidence from which the jury could find defendant guilty of burglary in the second degree.

The judgment is affirmed.

All of the Judges concur.