**STATE of Missouri, Respondent,**

v.

**Nathaniel HODGES,**

**and**

**Bernard Alonzo GRAY, Appellants.**

**No. KCD29914.**

Missouri Court of Appeals, Kansas City District.

Nov. 27, 1978.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1978.

Samuel Raban, St. Louis, for appellants.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

A jury found both defendants guilty of attempted burglary in the first degree. Each defendant appeals, assigning as error: (1) the overruling of their respective motions for a directed verdict; (2) the form of the respective verdict-directing instructions; and (3) a ruling by the trial court restricting cross-examination of one of the State's witnesses. We affirm.

The prosecution introduced evidence to show that at about 3:00 a. m. on July 10, 1977, John Leslie McCurdy was awakened by noise and voices immediately outside of his home. Apprehensive, he called the police. While calling, he heard screens being ripped from bedroom windows and he heard a plant situated on a stool within a foot of the window crashing to the floor. At the same time, he could see shadows cast upon the couch next to him reflecting movement by those outside one of the windows. From observing these shadows, it appeared to him that one person was crouching down as though stepping through the window.

Shortly thereafter the police arrived, and the three persons outside the house fled. Following a chase, the two defendants were apprehended. The police found in the vicinity a shotgun, a starting pistol and a can of mace. A screwdriver was also either taken from the person of defendant Hodges or from the ground close to where he was apprehended or had been. Also found below one of the windows with a torn screen was a new bicycle kick stand.

### I.

■ The first point on appeal in each appellant's brief reads as follows: "The trial court, in error, overruled the defendant's motions for a directed verdict of acquittal at the close of the State's case and at the close of the entire case, to the prejudice of the defendant [Nathaniel Hodges] [Bernard Alonzo Gray]." This assignment is insufficient under Rule 84.04(d) for the reason that it does not state wherein and why the challenged ruling of the trial court was erroneous. Nevertheless, this point will be reviewed for plain error under Rule 27.-20(c).

■ Both defendants argue principally under this point that the evidence shows a completed offense of burglary and that therefore the State was barred under Section 556.160, RSMo 1969 from charging them with a mere attempt to commit burglary. The rule which defendants seek to invoke applies only where the proof shows substantial evidence that the attempted offense was in fact consummated. *State v. Gadwood*, 342 Mo. 466, 116 S.W.2d 42 (1938); *State v. Baker*, 276 S.W.2d 131 (Mo. 1955). In order for there to have been a consummated burglary, there must therefore have been some substantial evidence of an entry. Such proof is here lacking.

Defendants argue that entry is shown in two ways: (1) by reason of McCurdy's observation of the shadows cast on his couch, and (2) because of the fallen plant just inside the window. With respect to the testimony about the shadows, that was far too uncertain to amount to substantial evidence. Thus the McCurdy testimony went in part as follows:

"Q. Mr. McCurdy, did you see any of the individuals enter your house?

A. No, sir, I did not.

Q. When you say that, did any of them enter ever so slightly in any way, shape or form?

A. Not that I could testify to. Like I say, I did see the silhouette on the couch but ___[interrupted]

Q. What did you view; what was this silhouette, can you tell us—

A. Silhouette was two—what I assumed to be men, at the window, and since it was only two dimensional silhouette I couldn't tell exactly what they were doing. They were at the window and there was the noise accompanying their movements at the window. I couldn't distinguish any features or anything because of the silhouette. There's a street light on the street behind the window there, that's how I got the silhouette.

Q. Just as the police came, did any of these men enter or make any movements to enter your house?

A. Like I say, said before, with the two dimension of the silhouette I couldn't really tell. A man was crouching down and he made a lifting movement at the window. I assume that he was coming in the window, but I couldn't really tell.

Q. Did the shadows indicate he was coming in the window?

A. They did.

Q. Did any part of his body, according to that silhouette, penetrate the pane of the window?

A. I can't tell for sure.

\* \* \* \* \* \*

Q. Can you tell me—this is very important—go back to the situation where—when you saw the silhouette coming through your window. Can you tell us exactly what you saw?

A. I saw a silhouette of two men at the window and just as the police car pulled up, I saw one of them crouching in a position that I interpreted to be one that you would get into to go through the window. Whether or not he was actually through the window, I can't say. I would say he was in the process of attempting to enter the window. The silhouette did not allow for any detail, just general body movements."

The evidence with respect to the fallen plant just inside the window was equally speculative with respect to showing the element of entry. The evidence as a whole tends to the conclusion that the bicycle kick stand was used to break through the screen and that in the course of this breaking the tool knocked over the plant. This indeed was the argument made by defense counsel during the course of trial when he stated to the court, "there's no way this screen could have been torn the way it is unless the instrument used to tear it made entry into the house." If this be so, then the intrusion of the instrument into the enclosure of the house was not suffi-

cient to constitute "entry" in the legal sense. A burglarious entry can be made by an instrument, but only "where a hook or other instrument is put in with intent to take out goods, or a pistol or a gun with intent to kill; but it is necessary that the instrument shall be put within the house, and that it shall be inserted for the immediate purpose of committing the felony or aiding in its commission, and not merely for the purpose of making an opening to admit the hand or body, or in other words for the sole purpose of breaking." 12 C.J.S. Burglary § 10b, p. 674. See *State v. Pigques*, 310 S.W.2d 942, l.c. 947 (Mo.1958).

Of course it is possible that in the course of breaking the screen the hand of one of the defendants may have intruded into the house. However, this is purely speculative. Where the evidence is equally consistent with the plant having been knocked off either by the instrument or by a hand, the evidence does not preclude a reasonable hypothesis of innocence and therefore is not sufficient to support a conviction. *State v. Boothe*, 364 S.W.2d 569 (Mo.1963); *State v. Walker*, 365 S.W.2d 597 (Mo.1963); *State v. Ramsey*, 368 S.W.2d 413 (Mo.1963); *State v. Morse*, 503 S.W.2d 450 (Mo.App.1973). Accordingly, the evidence would not have sustained a submission of the consummated offense of burglary.

Both defendants further argue on the last page of their respective briefs, for the first time, under the heading "Conclusion" that the prosecution introduced no evidence showing an intent by the defendants to steal. This argument is mistaken. The circumstances here are adequate from which the jury could and did infer the intent to steal. *State v. Ramsey, supra; State v. Faber*, 499 S.W.2d 790 (Mo.1973); *State v. Washington*, 484 S.W.2d 267 (Mo. 1972); *State v. Cuffie*, 403 S.W.2d 633 (Mo. 1966).

Finally, under this heading, defendant Hodges argues that there was no evidence to prove that he did anything to further the crime perpetrated by others. However, the prosecution witnesses observed Hodges standing in the yard near the victim's house at the time the crime was

being committed and when the officers arrived, he "kind of raised his arms like he was waving and gesturing to the other two fellows, then they took off running." This action by Hodges brings him within the ruling of *McMannus v. Lee*, 43 Mo. 206 (1869) which holds that any person who encourages or exercises the commission of a trespass "by words, gestures, looks or signs * * * is in law deemed to be an aider and abettor." Further, Hodges' flight from the police constitutes evidence indicative of guilt. *State v. Hooper*, 494 S.W.2d 306 (Mo.1973). In sum, the evidence was sufficient for submission to the jury, and the motions for acquittal were properly overruled. In this respect, there was no error, much less plain error in the meaning of Rule 27.20(c).

## II.

■ The defendants object to the form of the verdict-directing instructions which were framed in terms of whether the defendants "attempted to break into the dwelling house": and "attempted to make entry." Defendants point to MAI–CR 2.06 which directs that the instruction shall submit each essential element of the defense, "using the words 'attempted,' 'failed' and 'attempted but failed' as appropriate." The respective Point Relied On in each brief relative to this issue challenges the verdict-director as erroneous "by failing to include the words 'failed' or 'attempted but failed.'" In the argument portion of each brief, the contention is explained as a complaint that "the Instruction as given does not use the words 'attempted, failed' and 'attempted but failed' as specified in the first paragraph of 2.06." [1]

■ The major premise of defendants' argument consists of a misstatement of MAI–CR 2.06. Paragraph First of that form does not use the words "attempted, failed" as a separate phrase to be used as one of *two* alternatives along with "attempted but failed." Instead paragraph First sets out *three* choices ("attempted", "failed" and "attempted but failed") any

one of which can be used. Each verdict-director chose the first of the three permissible choices. Defendants' challenge is untenable.

■ Moreover, the claim of prejudice by defendants is unconvincing. They contend that under the instructions as given, the jury may have believed that they could be convicted of attempted burglary even though an entry was actually consummated. That fear cannot stand inspection in light of Instruction No. 8 which was given on behalf of defendants and which directed the jury: "If you find and believe from the evidence that defendants or any one of them made entry however slight into the premises at 1620 Paris Road you must find them not guilty of attempted burglary."

## III.

Defendants' final point complains of a restriction upon their effort to cross-examine Officer Holmes, a prosecution witness. In the course of his direct examination, Holmes testified that he took a statement from defendant Gray. With reference to that statement, the prosecuting attorney inquired and Holmes answered as follows:

"Q. Did you ask Mr. Gray how he got to Columbia?

A. Yes, sir.

Q. Did he respond or tell you how he got to Columbia?

A. Yes, sir.

Q. What did he say, sir?

A. He said he and his brother Mr. Hodges left St. Louis with another subject by the name of Craig in this vehicle.

Q. In this vehicle?

A. This '69 Cadillac, the picture here, * * * *"

On cross-examination defense counsel undertook to cross-examine Officer Holmes further about the statement in an effort to show that Gray had also stated to Holmes that the purpose of defendants' coming to Columbia was "to trade a shotgun for drugs." This could have been important,

---

1. The argument portion of each brief also seeks to introduce an additional argument against these instructions, but that additional argument will not be considered because not included in the Points Relied On, as required by Rule 84.-04(d).

because McCurdy had already testified that he had marijuana in his house and occasionally made sales to other people; and defendants' counsel was endeavoring to have the jury infer that defendants' intent was to get into McCurdy's house to make a marijuana purchase, not to steal. With this objective, defense counsel asked a series of questions, of which the following questions, objections and rulings were typical:

"Q. Did they tell you their purpose or business in Columbia?

A. Yes.

Q. What was that?

MR. SEITZ: I object.

THE COURT: Sustained. Proceed.

Q. [by Mr. Doak] Did they tell you what they were doing at McCurdy's house?

A. Yes, sir.

Q. What did they tell you?

MR. SEITZ: I object again, Your Honor.

THE COURT: That objection will be sustained. Proceed."

Defendants argue that the rulings restricting their cross-examination with respect to the statement given by Gray to Holmes was erroneous for the reason that the State had opened up the subject by asking about part of the statement and defendants therefore had the right to elicit from Holmes any further portions of the same statement made at the same time and place. The law does recognize the right of a defendant to inquire about and place in evidence all additional parts of a statement which will tend to explain a partial excerpt which has first been introduced by the prosecution. This principle gives effect to the natural justice of not allowing the jury to hear only a one-sided version of a conversation without giving the other party a chance "to fill out and explain the sense of" the conversation already in evidence. The idea is to prevent any half-truths or false impressions by providing the jury any "relevant remainder" which the jury needs in order to examine and weigh defendant's statement "in the light of the whole truth." *State v. Howard*, 564 S.W.2d 71 (Mo.App. 1978); *Kelley v. Hudson*, 407 S.W.2d 553 (Mo.App.1966).[2] In order to accomplish this just purpose, the law permits the additional portion of the defendant's statement even though self-serving and despite the fact that otherwise it would be excluded as hearsay. But to come within the reason of this exception, the additional portion which is sought to be introduced must be reasonably related to and explanatory of the portion already admitted.

The rule applicable to this situation is stated in 98 C.J.S. Witnesses § 381, pp. 141–142, as follows: ". . . as a general rule a witness who, on his direct examination has testified only as to a part of a particular conversation may on cross-examination be asked to give the rest or whole of the conversation or statement, so far as it is relevant and material to the controversy and *tends to explain, contradict, or qualify the part of the conversation which was testified to on direct examination * * *."* [emphasis added] See also 29 Am.Jur.2d, Evidence, Section 599, p. 653, and Jones on Evidence, Vol. 2, Section 13:54, p. 540.[3] The rule quoted accords with *State v. Sibley*, 207 S.W. 806[4] (Mo.1918); *State v. Hayes*, 391 S.W.2d 338[3] (Mo.1965); *People v. Flaherty*, 162 N.Y. 532, 57 N.E. 73 (1900), cited and quoted at length with approval in *State v. McDonough*, 232 Mo. 219, 134 S.W. 545, l.c. 548 (1911).

The scope of the direct examination with reference to Gray's statement to Holmes

---

2. The *Howard* and *Kelley* cases both deal with the doctrine of "curative admissibility," which is related to but distinct from the problem here under discussion. However, in both the underlying question is the same, in that the evidence sought to be introduced on cross-examination would not be admissible except in the interest of fairness in order to meet the earlier evidence admitted on direct.

3. Wigmore on Evidence Sec. 2113 states and recognizes the rule set forth by the foregoing texts, but also points out a line of cases following a more liberal rule which allows the additional material on cross-examination so long as it is relevant to the general subject matter. Wigmore concedes that "this liberal allowance cannot, in theory at least, be defended", but nevertheless expresses an inclination in its favor because of allegedly greater simplicity. It

was limited to how the defendants got to Columbia and that they came together with a third party. The trial court could reasonably conclude that the question into which defendants sought to delve on cross-examination, the purpose of the trip, did not tend to explain, contradict or qualify the portion of the statement brought out on direct examination. Accordingly, the testimony sought to be introduced by cross-examination of Holmes does not come within the exception sought to be relied upon by defendants. If they desired to rely on the defensive matter in question, it was incumbent upon them to do so by putting Gray on the witness stand, thereby subjecting him to the normal safeguard of cross-examination. The ruling by the trial court limiting the questioning of Holmes did not exceed the broad discretion possessed by it with respect to the scope to be permitted cross-examination.

Affirmed.

All concur.

does not seem to this court that an illogical legal principle should be adopted merely because of greater ease of administration and convenience.