# Court of Appeals.

April 20, 1900.

## PEOPLE vs. CHARLES FLAHERTY.

(162 N. Y. 532.)

1. TRIAL—JURORS—CODE CRIM. PROC. § 376.

Where a juror stated on examination that he had formed his opinion as to the guilt or innocence of defendant from the fact that he had been removed from his church by the bishop, and that he would naturally be influenced by that action, the omission to have him declare on oath that he believed that such opinion or impression would not influence his verdict, makes it error for the court to overrule defendant's challenge.

2. SAME.

The statute, Code Crim. Proc. § 376, requires the inquiry of the juror, in terms as to whether he believes that the opinion or impression that he had would not influence his verdict, and its omission leaves the *prima facie* disqualification incident to an existing opinion, in full effect.

3. RAPE—PROVING SEVERAL DISTINCT OFFENSES.

Where the court, under objection, allows the People to prove seven different acts of intercourse, under an indictment charging defendant with the crime of sexual intercourse with a female not his wife, under sixteen years of age, upon a date named, and then offered to entertain a motion to compel the People to elect upon which transaction it would stand, it constitutes an error in distinct violation of the rights of the defendant.

4. SAME—CHARGE TO JURY.

Where the only evidence as to alteration of baptismal records was given by P., H., and K., and its tendency was not only to establish that defendant did not do the deed but further that he did not have the opportunity, a charge permitting the jury seriously to weigh the speculations of the prosecution based upon defendant's being in the presence of the record with H. and P. as against the testimony of the last named, and that a copy then made by P. showed no change, was reversible error.

5. SAME.

Declarations made months after the first act of sexual intercourse, by a female under sixteen years of age, for the purpose of excusing the consent to the act are not admissible, nor is there any excuse for

suggesting that they were made so by the fact that the hearsay declarations of the comp.ainant as to the name of the person responsible for her condition was perhaps drawn out by the defendant instead of the People.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 6, 1898, affirming a judgment of the Court of Sessions of Livingston county convicting the defendant of the crime of sexual intercourse with a female not his wife under the age of sixteen years.

The facts, so far as material, are stated in the opinion.

Charles Flaherty, appellant, in person.

William Carter, for respondent.

PARKER. Ch. J.    By the judgment under review, Charles Flaherty was convicted of the crime of an act of sexual intercourse with a female not his wife while under the age of sixteen years.    His contention in this court is that errors, greatly prejudicial to him, were committed in the progress of the trial, and the result of our investigation of the record has induced the conclusion that his contention is well founded. Some of the errors we shall now point out.

In the first place, the safeguards that the statute provides for the purpose of assuring a defendant in a criminal trial a fair and impartial jury were not fully observed.    While the law is not so unreasonable as to require the exclusion from the jury box of all persons who have formed an opinion touching the guilt or innocence of the defendant on trial, it nevertheless treats the existence of such an opinion as establishing *prima facie* that the juror is disqualified, and the statute (Code Crim. Proc. § 376) then steps in and provides a method by which this *prima facie* disqualification may be overborne, *i. e.,* the juror must " declare on oath, that he believes that such opinion or impression will not influence his verdict, and that

he can render an impartial verdict according to the evidence, and the court is satisfied, that he does not entertain such a present opinion or impression as would influence his verdict." But, as we have recently held in People v. Wilmarth, 156 N. Y. 566, if the juror, who is *prima facie* disqualified by his opinion, fails to make such a declaration as the statute provides, his acceptance as a juror by the trial court constitutes error of law, which may be reviewed in this court where it appears that the defendant has been prejudiced thereby.

George H. Snyder, a man of considerable intelligence, was examined as to his qualifications for a juror after the defendant had exhausted his peremptory challenges, and in answer to inquiries put to him, said, among other things: " I formed my opinion as to the guilt or innocence of Father Flaherty from the fact that he was removed from his church by the bishop. He was guilty perhaps or else would not have done what they did do; that is one reason. There might be various things that I formed my opinion on; that was the most important. * * * This opinion I formed I have been satisfied was right from the time I formed it; it is formed largely upon the action of the bishop, as I understand that. I don't know whether the action of the bishop could be investigated on this trial or not. * * * The action of the bishop proved or disproved, I would naturally be influenced by that action. * * * Possibly it may be he would not only have to prove he was not guilty, but prove in some way facts aside from that with regard to the bishop thinking that he was guilty." His examination covers several pages of the record, but that which we have quoted is sufficient to establish, to say the least, that the juror had such an opinion as to the guilt or innocence of the defendant as constituted *prima facie* a disqualification, and it became necessary, therefore, to call for the " belief " of the juror upon the two subjects referred to in the part of the section of the Code that we have quoted, namely, whether the influence or impression which the juror had would influence his verdict, and whether he could render an impartial verdict

according to the evidence. But, after all this lengthy examination of the juror had ended, no such question was put to him by the prosecuting attorney; instead, the court at once decided that the juror was qualified, and, from what the court said in announcing its decision of the matter, it would appear that the court was under the impression that some time during the examination an attempt had been made to bring the juror within the provisions of the statute; perhaps, indeed, that may have been what the district attorney had in mind when on the direct examination of the juror this answer from him was obtained: " Notwithstanding that opinion I could render a fair and impartial verdict upon the evidence as it shall be offered in this case." It will be observed that this answer is not at all in compliance with the statute. By it the juror did not declare on oath that he believed that such opinion or impression would not influence his verdict; hence the statute was not satisfied either as to form or substance. In overruling the challenge, therefore, the court erred to the prejudice of the defendant, who, having exhausted his peremptory challenges, was compelled to allow Snyder to sit as a juror, although in addition to his admitted opinion, his relations were so friendly with one Maurice Noonan, with whom the prosecutrix lived, and who personally took so great an interest, and so far exerted himself in the prosecution of the defendant, as to render it especially desirable to the defendant that he should not sit.

The juror Henry Ford was excluded from the jury box by the exercise of the last of defendant's peremptory challenges. Had the defendant not been compelled to use it in excluding Ford, it would have been available to him to keep Snyder out of the jury box; but he was compelled to use it because the court refused to sustain his challenge to Ford on the ground of actual bias. Ford said in answer to defendant's counsel: " I have a pretty strong opinion now, and it would take sufficient evidence, of course, to change my mind. I am perfectly satisfied with my present opinion as correct. In hearing all the evidence introduced in this case I would have in my mind

my present opinion and information and compare them, I suppose, as they came along, with what I understood about the matter. * * * I have a definite, settled and satisfactory opinion whether this girl is telling the truth or not. I hold the same opinion yet; I have not had anything to change it since." What has already been quoted sufficiently establishes that the juror had an opinion touching the guilt or innocence of the defendant. I pass over the succeeding pages of his examination to the end of it, where may be found the one question during his examination which was apparently intended to meet the requirements of the Code. That question was put by the court and was as follows: " Q. Could you, in this case, divest yourself of any opinion you entertain and render a fair and impartial verdict upon the evidence brought out on the trial here? A. I think I could. Q. Could you do it? A. Yes, sir. The Court. The juror is qualified." So the court doubtless thought; but he was not legally qualified, because the question put to him did not comply with the terms of the statute. The court did not ask the juror whether he believed that the opinion or impression that he had would not influence his verdict. Such an inquiry the statute requires in terms, and for the reasons given in People v. Wilmarth, *supra,* which we do not deem it necessary to again present, it constitutes a most important feature of the statute's provisions and its omission leaves the *prima facie* disqualification incident to an existing opinion in full effect. It was error, therefore, for the court to overrule the defendant's challenge, and the result was that he was obliged to use his last peremptory challenge in order to exclude Ford from the jury box.

As these errors call for a reversal of the judgment, we might not consider the case further were it not that the trial was conducted in distinct violation of the rights of the defendant in most important respects, and as the same course was pursued on the former trial to a certain extent, it seems to be our duty to guard against the repetition on the next trial of some errors most damaging in effect, which the defendant has had to meet

on the previous trials. The indictment charges the defendant with the crime of an act of sexual intercourse with a female not his wife under the age of sixteen years, and alleges in due form that the act constituting the crime was committed on the 1st day of July, 1892. The complainant says that the defendant had sexual intercourse with her on seven different occasions prior to her becoming of the age of sixteen years. Notwithstanding the fact that if all of said acts were committed they constituted seven distinct crimes, for only one of which defendant was or could have been charged in this indictment, the People were permitted on the former trial to prove all of these acts, and the jury authorized to find the defendant guilty, provided they found he had committed any one of them. On the trial, which is the subject of this review, the court refused to follow the precedent thus set for it in one respect only; it did hold finally that the defendant could be convicted for only one offense, but that decision did not go far enough, as we shall see, nor was it made at the time that it should have been. The defendant was represented by skilled counsel, who, although having but a very short time for the preparation of the case, fully appreciated the difficulties that had unjustly been placed upon the defendant on the former trial to defend against seven distinct crimes, where but one was or could have been charged, and so, at the very opening of the trial, by request to the court, and also to the district attorney in open court, by direct motion made and objection to evidence taken, the counsel presented in almost every way conceivable to the court that the defendant was charged with but one crime, could be tried for but one, and was entitled to know at the very beginning of the trial whether he was to be tried for a crime committed on the date alleged in the indictment, and if not, then that the People should state the date of the crime which it was proposed to prove as the one charged in the indictment. But the district attorney protested that it was his right to prove as many similar crimes as he could, and to submit any one he chose as the one charged in the indictment. The court sus-

tained the position of the district attorney and for seven days the taking of testimony on the part of the People proceeded, during the course of which twenty-one witnesses were called and testified to various outlying circumstances, offered apparently in the hope that they might be in the end regarded as in some way corroborating the complainant as to some one of the transactions detailed by her. A long, skillful and, at times, effective cross-examination had taken place, but without any knowledge on the part of the cross-examiner as to which one of the seven acts about which the complainant testified was to be submitted to the jury as the crime charged in the indictment. The People rested and then the court offered to entertain a motion to compel the People to elect upon which one of the transactions it would stand. The motion was made; direction to the People given; selection made; and then just at the very moment when the defendant was obliged to put his witnesses on the stand in support of his defense he was advised, and for the first time, for what particular crime his conviction was to be asked at the hands of the jury. The statute provides that an indictment must contain " a plain and concise statement of the act constituting the crime, without unnecessary repetition " (Criminal Code, § 275) ; " must charge but one crime and in one form," except where it may be committed by different means (Criminal Code, §§ 278, 279) ; and this court said in People v. Dumar, 106 N. Y. 502, 509) : " The indictment, therefore, must charge the crime, and it must also state the act constituting the crime. The omission of either of these things would necessarily be fatal to the indictment." And, again, the court, in assigning a reason for the legislative requirement that the particular act constituting the crime should be stated, said: " The manifest intention of the legislature in requiring the indictment to state the act constituting the crime was, among other things, that the accused should learn from it what he was called upon to defend." In the Dumar case, as in others that might be cited, the indictment charged the crime of grand larceny, and alleged acts consti-

tuting the crime of grand larceny, but on the trial the People attempted to prove acts constituting the crime of grand larceny it is true, but they were very different from the acts alleged in the indictment, with the result that in this court the judgment of conviction was reversed.

If this indictment had alleged the commission of the seven different acts constituting the crime of rape in the second degree it would have been bad for duplicity and, of course a defendant cannot be convicted for a crime that cannot be alleged in an indictment, which was the situation at the time this indictment was drawn as to six of the alleged acts constituting rape in the second degree. And yet as we have seen, the People were permitted to prove these seven distinct acts as seven distinct crimes charged in the indictment, for either one of which the defendant could be convicted under the indictment, the choice of selecting the one upon which the jury should be asked to find a verdict of guilty being left to the close of the People's case and could well have been left, according to the view of the district attorney, until it became time to present the case to the jury. In other words, the effect of erroneously alleging a crime as having been committed on a particular date has, if this view be correct, great advantages for the prosecution over that of alleging things truly as the law contemplates; for in the latter case even the district attorney would not contend that he could offer evidence tending to prove six other crimes and ask for the conviction for such one of them as he should elect. But the error of date in the indictment, whether the result of mistake or intention, carries with it no such power to the prosecuting officer. The indictment alleges acts constituting but one crime, and while the mistake as to the date will not prevent the prosecution from proving the crime charged in the indictment, the indictment will be deemed to cover the offense attempted to be proved nearest in point of time to the date in the indictment. It is not difficult to understand how the court came to fall into error in respect to the matter we have been considering; for to the

general rule that a defendant in a criminal action cannot have proved against him the commission of other crimes unless he puts his character in issue, there is an apparent exception where the charge is of unlawful sexual intercourse. Such evidence, however, is not admitted for the purpose of proving other offenses against the law, but solely upon the view that it may tend to corroborate the complainant's account of the acts alleged in the indictment as constituting the crime. I shall only stop to hint at the reasons upon which this rule is founded, the underlying idea being that it is probable that parties who have, prior to the offense charged, indulged in sexual intercourse, did commit the specific offense charged; that the adulterous disposition of the parties, both before and at the time of the act of sexual intercourse in controversy is a circumstance which may be received in corroboration of other evidence upon that issue; and so it was. first held that witnesses might testify to acts of the parties indicating illicit relations as corroborative of the testimony offered to prove the particular offense charged in the indictment.

And the next step taken is described in People v. O'Sullivan, 104 N. Y. 481, and is to the effect that if such evidence be competent from disinterested witnesses who may have observed the conduct of the parties, it is not rendered incompetent because it comes from the complainant herself. Speaking of such testimony from the complainant, Judge EARL said: "It is not as valuable, or trustworthy, or important, as if it had come from other witnesses. * * * But whether it was important or not there is no rule which condemns it, and there is abundant authority to justify its reception."

But it will be observed that while evidence of this character is admissible, it is so for the purposes of corroboration *only.* It is not admissible, and never was, for the purpose of showing the commission of separate offenses of the character of the one charged in the indictment in order to convict the defendant of one of the crimes thus proved. The receipt of evidence of this character necessarily presupposes the introduction of some

evidence at least tending to prove the crime charged in the indictment, for until evidence tending to prove the crime charged has been introduced, there is nothing to corroborate, and, therefore, there is no justification for the introduction of evidence indicating that the parties had sustained similar relations to each other on prior occasions, upon the view that acts of illicit intercourse are not apt to be sporadic, but instead are evidence of an adulterous disposition in the parties, and are upon opportunity quite likely to be repeated. We do not mean to say that a trial court should not, under any circumstances, admit corroborative evidence in advance of evidence tending to prove the offense charged, but there was no excuse for taking that course in this case. The grievance of the defendant herein is founded upon much broader lines than the mere order of procedure, and is that the court sustained the efforts of the district attorney to prevent him during seven days of the trial from finding out as to which one of the seven offenses testified to by the complainant he was indicted for and was to be tried for. This was done on the erroneous view of the law that the indictment covered not simply one offense, but each and every one of seven distinct offenses down to such time as the district attorney should be pleased to elect, or the court should compel him to choose, one offense for presentation to the jury, at which moment the other six offenses would cease to be covered by the indictment. This is a view for which we have been unable to find any support either in principle or authority.

Again the court erred in charging the jury touching the alteration of the baptismal record. Upon that subject it said, among other things, " On the other hand, the people claim that there was opportunity to change it, and that the defendant was the only person who could be interested in the change of the record, and they ask you to infer from that that he is the man who did it. * * * If, however, you do come to the conclusion that he did it, then you are to give it such weight as corroborating testimony as you deem it entitled to." Such

evidence as there was on the subject was given by Mr. Peck, Father Hendricks and Bridget King, and its tendency was not only to establish that the defendant did not do the deed, but, further, that he did not have the opportunity. And yet, without evidence to the contrary, and in the face of evidence strongly indicating that the defendant did not alter the record, the jury were permitted seriously to weigh the speculations of the prosecution based upon the defendant's being in the presence of the record with Father Hendricks and Mr. Peck, as against the testimony of the last-named persons, which included a statement by Mr. Peck that he took a copy of the record then and there, and the record had not then been changed.

The People were also allowed to show by the testimony of Jennie Skillen the reasons given by the complainant nearly nine months after the first act of sexual intercourse that induced her to consent and persuaded her to silence. Those reasons must have been most prejudicial to the defendant with the jury, and yet no authority can be found for their admission. The charge of rape made against a man, if promptly made, may be received in evidence, although hearsay, in corroboration of the complainant's story. People v. O'Sullivan, *supra*, and cases cited. But declarations made months afterwards for the purpose of excusing her consent to the act are not admissible for any purpose. And it is not seriously contended otherwise, the claim now made being that defendant's counsel in cross-examining the witness Skillen opened the door wide enough to let in this hearsay and improper testimony. A district attorney should not be looking for openings through which he may pass, without danger to his case on appeal, testimony not favored by any rule of evidence in the hope that he may affect defendant's case to his prejudice by considerations that are justly abhorred by the law and its faithful administrators. It is his duty to seek a conviction through lawful methods and that includes legal evidence and the court should not encourage new devices that aim at different results. Now the dis-

trict attorney having brought the fact that the accusation against defendant by Marie Sweeney was first made to the Skillen family, the defendant sought to show on cross-examination that Jennie Skillen had first suggested the name of Father Flaherty to Marie Sweeney as the author of her misfortune. Counsel said: " Didn't you say to her, ' Wasn't it Father Flaherty? ' and she said ' yes? ' A. No, sir, I did not. Q. How did you say that? A. As near as I can remember I asked her who she had been with. She didn't answer. I said, ' Marie, you know and I know you have been with some one, and I want you to tell me who the author of your trouble is.' She wouldn't tell me. Q. I only ask you for the question and the answer, the time when the name of Father Flaherty was used; what did you say and what did she say? A. I said, ' Who was it? ' * * * She then said it was Father Flaherty. Q. And that was the first mention she made of the name of Father Flaherty in the matter? A. Yes, sir." This was all of the cross-examination on that subject. The counsel for the People then put the question which, after referring to the statement of Marie Sweeney that Father Flaherty was responsible for her condition, concluded as follows: " Did she give you any reason why she had intercourse with him? " These reasons were not competent as evidence prior to the cross-examination of the witness, nor were they made either necessary or competent by that cross-examination. This was not a case where a part of a conversation being given, the rest was needed in order to present the situation fairly; nor did the question call for the rest of the conversation, but instead it asked for the reasons only, and they were not competent as evidence for any purpose; nor is there even excuse for suggesting that they were made so by the fact that the hearsay declarations of the complainant as to the name of the person responsible for her condition was perhaps drawn out by the defendant instead of the People.

The judgment of conviction should be reversed and new trial ordered.

O'BRIEN, BARTLETT, VANN and LANDON, JJ., concur; HAIGHT, J., concurs except as to the competency of jurors, and MARTIN, J., in result.

Judgment of conviction reversed, etc.