[Crim. No. 4222. In Bank.—August 15, 1939.]

THE PEOPLE, Respondent, v. JOHN ADAMS, Appellant.

R. H. Cantillon, John E. Glover and Gladys Towles Root for Appellant.

Earl Warren, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

HOUSER, J.—From each of two judgments which were rendered against defendant pursuant to several verdicts by a jury to the effect that defendant was guilty of a violation of the provisions of section 288 of the Penal Code, defendant has caused to be presented to this court his appeal which originally was decided by the District Court of Appeal. Specifically, it was charged in the information upon which he was tried that defendant did "lewdly commit a lewd and lascivious act upon and with the body, members and private parts thereof, of one Cornelia ——, who was then and there

a female child . . . of the age of five years . . . '' Defendant also appeals from the order by which his motion for a new trial was denied.

■ Although the child testified in great detail concerning the commission of the offense, an examination of her testimony, as it appears in the reporter's transcript thereof, reveals many discrepancies, inconsistencies and improbable statements in her story. Indeed, in various respects, her several incidental statements are directly contradicted by different apparently disinterested witnesses. In no essential particulars was the testimony of the child directly corroborated; and when the fact is considered that defendant emphatically denied each of the accusatory statements which was made by the little girl, the asserted errors that have been urged by appellant on this appeal, as constituting reasons that impel a reversal of the judgment that was rendered against him, assume a greater magnitude and present a most serious aspect.

■ The first complaint that is made by appellant relates to erroneous admission of evidence against defendant. It appears that in the redirect examination of the mother of the child, she was permitted to repeat the substance of an asserted conversation which had taken place between her and the child relative to former similar conduct toward the child by defendant, which assertedly had occurred about two years prior to the alleged commission of the instant offense, at a time when the child was only three years old. That incident of the trial is disclosed by the following excerpt from the record, to wit:

"Q. By Mr. Ferguson: Will you tell us what, if anything, Cornelia told you on a prior occasion? A. Cornelia was so small; I was sitting her on the toilet in the bathroom and she said that John Adams had taken his hand and put it on her body, as she called her privates. And I asked her how John was dressed and she said he was in his pyjamas. But Cornelia wasn't more than three years old at the time and I just—children always follow you around the house and into the bath room, and I paid no further attention to it.''

When the child was on the witness stand, she expressed her inability to remember any such occurrence. It is obvious that to permit the mother to repeat either the details or the substance of such a narrative constituted the admission of asserted facts which were most damaging to defendant, and

which were hearsay in character. That such evidence was detrimental in character, and that it was admitted in violation of the rule which ordinarily obtains with relation to criminal actions, require the citation of no authority to sustain the claim of prejudicial error. However, in the case of *People* v. *Ewing*, 71 Cal. App. 138, 142 [234 Pac. 917], the defendant was charged with the offense denounced by section 288 of the Penal Code. There also the mother testified to the alleged misconduct of the defendant which she said had been related to her by her child, shortly after the alleged offense had taken place. The court there said: "The rule is that in prosecutions of this character proof of complaint of the act *while it is recent* may be shown by the prosecutrix and also by the person to whom the complaint was made. While such evidence is in the nature of hearsay, its admission is justified upon the ground that in such cases, when restricted to the fact of complaint alone, it is in the strictest sense original evidence. The rule also applies to complaint on the part of one under legal age, there being no distinction between cases where there was actual resistance and those in which nonconsent is inferred (*People* v. *Baldwin,* 117 Cal. 244, 251 [49 Pac. 186]; *People* v. *Wilmot,* 139 Cal. 103 [72 Pac. 838].) Here, however, the original statement made to the mother was one not in the nature of a complaint, but was elicited from the child only after a spanking had been administered to her, and later, and after the mother had interviewed defendant, the further declaration was made by the child inculpating him." The court proceeded to say: "This is not the character of complaint contemplated by the rule. *It is purely hearsay,* and the rule does not extend to the details of the acts complained of. The cross-examination of Mrs. Wells upon this subject did not justify the admission of this incompetent evidence, and it was no more admissible on redirect examination than it would have been in chief. (*Wagner* v. *People,* 30 Mich. 384; *State* v. *McDonough,* 232 Mo. 219 [134 S. W. 545]; *People* v. *Flaherty,* 162 N. Y. 532 [57 N. E. 73]; 4 Wigmore on Evidence, sec. 2119.) The error is even more apparent when it is considered that the child was not sworn, she being incompetent as a witness. *Hearsay* evidence cannot be given of the declarations of a child who has not the capacity to be sworn, nor can such child be examined in court without oath. (4 Blackstone's Commentaries, c. 15, sec. 3.) There can be no doubt but what the ad-

mission of this evidence constituted error; . . . '' (Emphasis added.)   See, also, to the same effect: *People* v. *Mayes,* 66 Cal. 597, 599 [6 Pac. 691, 56 Am. Rep. 126].   In the case entitled *People* v. *Guiterez,* 126 Cal. App. 526, 529 [14 Pac. (2d) 838], it also was said: ''It is conceded that the person to whom a child, who is too young to become a competent witness, has made complaint concerning a recent assault upon her, may testify regarding the fact that such complaint was made . . . But this rule does not authorize the *hearsay statement of circumstances concerning the attack which may have been related by the child.*   It is said in the Ewing case, *supra*: 'The rule does not extend to the details of the acts complained of.'   In the present case the statement which was related by the mother of the child does include circumstances and details which, under a proper objection, would be inadmissible.''   (Emphasis added.)   Again, in the case entitled *People* v. *Wilmot,* 139 Cal. 103, 105 [72 Pac. 838], it was said: ''The rule enunciated by the authorities generally, and by all the decisions in this state, is in all cases to admit evidence of the *fact of complaint,* and in no case to admit anything more (*People* v. *Mayes,* 66 Cal. 597 [6 Pac. 691, 56 Am. Rep. 126] ; *People* v. *Tierney,* 67 Cal. [54] 55 [7 Pac. 37] ; *People* v. *Snyder,* 75 Cal. 323 [17 Pac. 208] ; *People* v. *Stewart,* 97 Cal. 238, 241 [32 Pac. 8] ; *People* v. *Barney,* 114 Cal. 554 [47 Pac. 41] ; *People* v. *Baldwin,* 117 Cal. [244] 251 [49 Pac. 186] ; *People* v. *Lambert,* 120 Cal. [170] 171 [52 Pac. 307] ) ; for, as said by Greenleaf 'The evidence when restricted to this extent is not hearsay, but in the strictest sense original evidence.   *When, however, these limits are exceeded, it becomes hearsay in a very objectionable form'.* It is clear that to allow any mere statement of the prosecutrix as to the details of the affair, or as to the name of the person accused by her, to be given in evidence would be to allow hearsay evidence to prove the offense.   (See *People* v. *Lambert,* 120 Cal. [170] 171 [52 Pac. 307].)  . . . ''

It would seem clear in the instant case that, for several reasons, the evidence related by the mother of the prosecutrix to the effect that, at a time some two years prior to the time of trial, when the child was but three years of age, the latter had told her of the alleged actions of defendant at or about that time, erroneously was admitted.   In the light of the cases just cited, not only was the purported ''complaint'' of the child as to the acts of the defendant not ''recent'' in

relation to the alleged offense for which defendant was on trial in the instant action (within the rule set forth in the Ewing case), but the asserted "complaint" of the child, as purportedly was related to the mother, contained the "circumstance concerning the attack", which testimony was specifically denounced in the Wilmot case as being "hearsay in a very objectionable form". The evidence was purely hearsay. In that regard the language of the court in the case of *Englebretson* v. *Industrial Acc. Com.*, 170 Cal. 793, at page 798 [151 Pac. 421], employed in a discussion with regard to the hearsay evidence rule, is pertinent: "The unreliability of a relation by one person of statements made to him by another is so well known that it has become customary and is considered necessary for courts, in cases where oral admissions of a party are proved against him, to instruct the jury that they must view such admissions with caution, because of the tendency of witnesses to make perverted or inaccurate reports. We have many decisions of courts of the highest standing declaring the importance and substantial character of the rule against hearsay testimony. It has been said that the fact 'that this species of testimony supposes some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover combine to support the rule that hearsay evidence is totally inadmissible. . . . The danger of admitting hearsay evidence is sufficient to admonish courts of justice against lightly yielding to the introduction of fresh exceptions to an old and well-established rule, the value of which is felt and acknowledged by all. . . . ' "

The next assignment of error relates to asserted misconduct of Mr. Ferguson, the deputy district attorney, who was in charge of the prosecution of the action. The incident regarding which complaint is made occurred near the beginning of the opening argument to the jury. In substance, Mr. Ferguson drew attention to the fact that the ordinary citizen was loath to believe in the existence of the happening of the episodes such as that to which the child had testified; and then said: " . . . If there is any woman upon this jury who has any such a thought as that, I will ask you to just remember back to the things you have heard about in this city of ours and adjoining communities during the

last several years. . . . '' Immediately thereafter the following colloquy occurred: "Mr. Cantillon: Just a moment. If your Honor please, I am going to object to that as being improper argument, inflammatory in character and assign it as misconduct and ask that the jury be instructed to disregard it. . . . Mr. Ferguson: I think it is legitimate argument, your Honor. The Court: Objection overruled. Mr. Ferguson: You remember the Dyer case, the Northcott case—. Mr. Cantillon: I am going to object to that as improper argument, inflammatory and ask that it be stricken from the record and the jury instructed to disregard it. Mr. Ferguson: I am willing that should be done, your Honor. The Court: Very well. The last remark, whatever it was, is stricken. Mr. Cantillon: I move that the jury be instructed to disregard it, your Honor. He just mentioned the Dyer case, your Honor. Mr. Ferguson: Please forget the Dyer case. I don't claim it is proper in this case. I am not silly and I know none of you men and women are silly.'' A few minutes thereafter, Mr. Ferguson made the further statement that: '' . . . I don't seek to inflame your minds against this defendant as an individual. On the contrary, I ask you to view the evidence calmly and dispassionately and *render a verdict such as you will be proud of and can adhere to in the days to come,* not to be led away by any passion against the defendant because of the terrible nature of the accusations against him, but yet, on the other hand, don't believe for a moment that these things don't occur in this metropolitan area of ours, in this modern life we are living, because they do occur—they occur time and again without number. So I am merely asking you to take this evidence as it is and base your verdict upon the evidence as it is and upon the law as given to you by the court, and that was my only purpose in making the very brief reference I made a few moments ago, to other things you know of, you know of by your own knowledge as having occurred in this city of ours and adjoining communities''. (Emphasis added.) Counsel for defendant objected to the foregoing remarks and moved the court to strike,—which objection was overruled by the trial court.

In connection with the Northcott and Dyer cases, to which the deputy district attorney had referred, it need only be said that they were not only the most outrageous in character,

but also were the most notorious that have occurred within the State of California in recent years. Each of them received so much newspaper publicity and were so much the subject of general conversation that it would have been unbelievable that any person who had read the newspapers at all, or who had indulged in ordinary conversation with his neighbors or friends, was not made familiar with the details of the atrocities perpetrated in each of those cases. It is charged by the appellant herein, and it is not entirely improbable of belief, that the purpose of the deputy district attorney in making reference to those cases was not confined to that of assuring and reminding the jurors that occurrences of the nature of that involved in the instant case were not uncommon,—but that, by recalling the Northcott and the Dyer cases to the minds of the jurors, they might entertain a feeling of hostility toward defendant and thereby engender a hatred of him, with the consequence, as Mr. Ferguson suggested, that they would "render a verdict such as you will be proud of and can adhere to in the days to come". No conclusion other than that the remarks were inflammatory and most objectionable may reasonably be reached. Nor by the expedient of attempting to withdraw the remarks was it possible to erase from the minds of the jurors the suggestions originally made. Jurors are human, and it is not within human possibility to forget so easily outstanding facts or situations pertaining to other cases which have been brought to their attention and which are similar to those of the case on trial before them. The damage had been done. It was irreparable. That the remarks objected to may have influenced the verdict that was rendered against defendant is not at all improbable; and if such influence prevailed, in that respect defendant was deprived of the benefit of a fair trial.

The third assignment of error presented by the appeal consists of the refusal by the trial court to give to the jury the following instruction which was requested by defendant:

"By reason of the fact that charges of the nature involved in this case can easily be made and are often not easy to disprove, I instruct you that it is your duty to treat with great care and caution the testimony of the prosecutrix Cornelia ——. You are not to be moved by passion, sympathy or prejudice to find a verdict of guilty on any count of the information and unless you are convinced beyond a reasonable doubt from the evidence that the defendant is guilty as

charged on one or more of the several counts of the information, you should find the defendant not guilty.''

In that connection, and with particular reference to the certain inability of any accused man to produce evidence sufficient either to create in the minds of the jurors a reasonable doubt respecting his guilt, or to disprove a charge of the nature of that here involved, the language employed by this court in the case of *People* v. *Benson*, 6 Cal. 221, 223 [65 Am. Dec. 506], is interesting. It was there said: ''There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengeance. In such cases the accused is almost defenceless, and Courts, in view of the facility with which charges of this character may be invented and maintained, have been strict in laying down the rule which should govern the jury in their finding. From the days of Lord Hale to the present time, no case has ever gone to the jury, upon the sole testimony of the prosecutrix, unsustained by facts and circumstances corroborating it, without the Court warning them of the danger of a conviction on such testimony.''

The question also received careful consideration in the case of *People* v. *Vaughan*, 131 Cal. App. 265, 273 [21 Pac. (2d) 438], where the court said: ''The learned trial judge at the time he denied defendant's motion for a new trial stated as his reason for refusing to give these instructions that they were cautionary, evidently viewing them as prohibited by section 19, article VI of the Constitution, providing that judges shall not charge juries with respect to matters of fact. There is authority for this position. (*People* v. *Anthony*, 185 Cal. 152, 160 [196 Pac. 47].) However, a review of cases of this type would indicate that the courts generally have been reluctant, where testimony of the complaining witness is uncorroborated, to disregard the observation made by Chief Justice Murray in deciding the Benson case [*People* v. *Benson*], 6 Cal. 221 [65 Am. Dec. 506], involving a child of thirteen years: 'From the days of Lord Hale to the present time, no case has ever gone to the jury, upon the sole testimony of the prosecutrix, unsustained by facts and circumstances corroborating it, without the court warning them of the danger of a conviction on such testimony.' For example, we find the following in *People* v. *Caldwell*, 55 Cal. App. 280, 298 [203 Pac. 440, 448] : 'Cautionary instructions

of this character are proper in rape cases, under many decisions, either when the prosecutrix is a child of tender years or when her testimony is uncorroborated.' And in the case of *People* v. *Scott*, 24 Cal. App. 440 [141 Pac. 945, 947], involving a moral offense against a girl about fourteen years old, the court says: 'For reasons readily suggested it is entirely proper for the court to caution the jury to weigh the testimony of the prosecutrix with the utmost care that no wrong be done the defendant.' . . . '' To like effect, see the case of *People* v. *Garrett*, 27 Cal. App. (2d) 249 [81 Pac. (2d) 241].

However, the conclusions announced in the foregoing authorities may have been somewhat weakened by the decision that was rendered by this court in the case of *People* v. *Anthony*, 185 Cal. 152 [197 Pac. 83], where it was declared (syllabus) that it was not error ''to refuse an instruction embodying the statements that it is particularly difficult for a defendant to clear himself of such a charge, that no charge is more easily made or more difficult to disprove, and that the two parties are usually the only witnesses to the act, as the same are statements of fact, not of law''.

Notwithstanding the seeming conflict which thus appears in the several decisions by the courts of this state, no great difficulty is presented in the instant case for the reason that this court is of the opinion that the rights of defendant in the premises were carefully guarded and fully protected by the giving to the jury, at the request of the prosecution, the following instruction:

''That a charge of this nature is particularly difficult for a defendant to clear himself of. No charge can be more easily made, and none more difficult to disprove. From the nature of the case, the complaining witness and the defendant are generally the only witnesses. The law does not require in this character of case that the prosecuting witness be supported by another witness or other corroborating circumstances, but does require that you examine her testimony with caution.''

In addition thereto the jury was generally instructed that in reaching a verdict, the jury should be ''governed therefore solely by the evidence introduced in this trial and the law as given you by the Court. The law will not permit jurors to be governed by mere sentiment, conjectures, sympathy, passion or prejudice, public opinion or public feeling. . . .

that you will carefully and dispassionately weigh and consider the evidence and the law of the case and give to each your conscientious judgment; and that you will reach a verdict that will be just to both sides, regardless of what the consequences may be, and which will express the individual opinion of each juror.''

But, as has been suggested by appellant, a more serious situation was developed with respect to the question whether defendant was accorded a fair trial,—which becomes implicit from the following facts: When the child prosecutrix was on the witness stand, she testified in voluble detail with respect to acts and conduct of defendant on an occasion when not only the said child, but also her friend Janet— (who, like the prosecutrix, was 5 years of age) was an asserted victim of defendant's misconduct. No complaint respecting the admissibility of such testimony has been registered by appellant. However, it appears that when Janet was called as a witness, she was unable to qualify as such. In consequence of that situation, defendant offered for the guidance of the jury—but the trial court refused to give to it—the following instruction:

''That you are not to draw any inference whatsoever from the fact that the Court ruled as a matter of law that the witness Janet . . . was not competent to testify in this case. This fact has no place whatsoever in your deliberations as to the guilt or innocence of the defendant, and you shall not surmise as to whether what the child's testimony might have been had she been allowed to testify in the case.''

It is clear that the jury should have been so instructed. A review of the questions that were propounded to Janet on her *voir dire* examination to test her qualifications as a witness, and the answers thereto, leaves no doubt as to the correctness of the conclusion by the trial court regarding her eligibility as a witness. Moreover, with respect to such little knowledge of pertinent facts as she did display, it was most apparent that she had been ''coached''. Considering the patent inability of the child to grasp, intelligently, the purport of simple qualifying questions and appropriately to respond thereto, together with the assumed fact that the deputy district attorney must have been aware of that situation before the child was called as a proposed witness,—the fact that, in such circumstances, the child was deliberately offered as a witness borders on prejudicial misconduct. How-

ever, whether dereliction of duty on the part of the deputy district attorney is a proper question for consideration herein is not essential to a determination of this case. But, at any rate, the appearance of the child on the witness stand constituted in itself an implied assurance on the part of the prosecution that if permitted to testify, in some measure she would corroborate the testimony which already had been given by Cornelia respecting the particular misconduct of defendant; at least such an inference was readily deducible by the jury, and its conclusion may have been influenced thereby. In such circumstances, the refusal of the trial court to give the proffered instruction to the jury, and thus to disabuse the minds of the respective jurors with respect to any detrimental inference regarding the testimony which the child might have given, was in disregard of the rights of defendant and prevented him from having a fair trial.

From all that may be discerned in the record regarding the question of whether defendant had been accorded the fair trial impliedly guaranteed to him by constitutional provision, taken as a whole, the trial was unsatisfactory. On the one hand, the child prosecutrix displayed an intelligence far beyond her years. However, her testimony to the effect that she had "talked a good deal with her mamma and daddy about it"; also "to Mr. Ferguson here about it"; and that her mother wanted her "to remember good", and that the reason she thought her mother wanted her to remember it well was because her mother kept telling it "over and over" to her,—suggests the conclusion that the child had been carefully "coached" in her entire story. Notwithstanding the superior intelligence which was possessed by the child, it is beyond question that at the age of five years, or thereabouts, most children are particularly and peculiarly impressionable. The effect and influence upon them at that age by the conduct and conversation of their elders are most marked. In the instant matter, therefore, the fact that the mother—undoubtedly with proper or even laudable motives—repeated the details of the story to the child "over and over", in some probability at least, may have had the effect of substituting in the child's mind the mother's version for that of the incidents which actually occurred. And although as a matter of law it cannot be declared that the story, as told, in its essentials is inherently untrue, nevertheless, in performance or

execution, some of its more sordid details are most improbable of occurrence.

With respect to this kind of case, when it is remembered that "There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengeance," and that "In such cases the accused is almost defenseless," it certainly behooves the courts of last resort rigorously to insist upon the observance of those salutary rules regarding the admission of evidence and the trial of actions in general, which for centuries have been in practice to the end that an accused may be assured of a fair trial. As frequently has been said regarding cases of the instant character, "No charge can be more easily made, and none more difficult to disprove." As a matter of practical observation to many judges who have presided over trials of this nature, it is plainly recognized that, notwithstanding the salutary rule that an accused is presumed to be innocent until his guilt has been established beyond a reasonable doubt, nevertheless, to the mind of the average citizen or juror, the mere fact that a person has been accused of the commission of such an offense seems to constitute sufficient evidence to warrant a verdict of "guilty"; and that—instead of its being necessary for the prosecution to prove his guilt beyond a reasonable doubt—in order to secure an acquittal of the charge, it becomes incumbent upon the accused to completely establish his innocence, and to accomplish that result not only by a preponderance of the evidence but beyond a reasonable doubt. In such a situation, the only defense available, ordinarily, to the accused is his own denial of any asserted misconduct, together with evidence of a former good reputation; otherwise, he is utterly defenseless and at the mercy of a jury which probably is very much prejudiced. In at least a majority of such prosecutions, over the emphatic and categorical denial by the defendant of the incident or incidents testified to by the prosecutrix, the accused is found "guilty" on evidence that, because of the nature of the asserted offense, rarely is possible of corroboration; and it is not at all improbable that at the instigation of either over-suspicious or misinformed mothers, who may entertain malice or personal prejudice toward the accused, miscarriages of justice often result,—with the consequence that innocent men are or have been humiliated, ruined in character and good reputation, and caused to suffer ignomini-

ously for the alleged commission by them of offenses of which they were or are not guilty. It is because of the recognized existence of the ease with which convictions of men, even those of unblemished reputation, may be secured in cases of the instant kind that courts are at pains to insist upon fair trials in all respects being accorded to the accused. Errors committed either by the prosecution or by the court in the course of the trial, which ordinarily might be considered trivial and as of no material consequence from a standpoint of adverse effect upon the rights of a defendant, may become of great importance when committed in a case of the character of that here involved.

It is ordered that the judgments, and the order by which the motion for a new trial was denied, be, and they are, reversed and the cause remanded for new trial.

Shenk, J., Pullen, J., *pro tem.*, and Curtis, J., concurred.

Edmonds, J., concurred in the judgment.