[Crim. No. 3863. Second Dist., Div. Three. May 29, 1945.]

THE PEOPLE, Respondent, v. CHARLES AUGE, Appellant.

Joslyn & Hollopeter for Appellant.

Robert W. Kenny, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was convicted in a jury trial of the crime of statutory rape, a felony, in two counts. He appeals from the judgment and from the order denying his motion for a new trial.

█ It is not asserted that the evidence was insufficient legally to support the judgment, but it is contended that the court committed prejudicial error in refusing to give a cautionary instruction in the form requested by the defendant and in giving an incorrect and misleading cautionary instruction.

Defendant is the stepfather of the prosecutrix, Martha, who was sixteen years of age when the alleged offenses occurred about February 1, 1944, and about January 25, 1944. He married her mother in 1934 when Martha was five years of age and when Martha's brother Charles was two years of age. Defendant and his wife and the two children lived together in Michigan until September, 1942, when the wife left him and took the children with her. After a reconciliation they all lived together again about one month and then she left him and took the children with her. After another reconciliation they all lived together until September, 1943, when they came to Alhambra, California, where they lived in a house trailer until they separated on February 15, 1944. From January 15, 1944, until February 15, 1944, defendant was employed from 7:30 a. m. to 5:30 p. m., and he usually returned home about 6 p. m. During that same period his wife was employed from 7:30 a. m. to 6 p. m , and she usually returned home about 6:30 p. m. The house trailer, 24 feet in length, had two rooms—a living room and a kitchen, and there was a couch in the kitchen.

The prosecutrix testified in part that on a Tuesday or Wednesday "around" February 1, 1944, she had returned from school and was preparing dinner at the kitchen sink when the defendant arrived home from work about ten minutes before 6 o'clock; that he set his lunch pail down, took off his coat, walked directly over behind her as she stood at the sink, put his arms around her and asked her to have intercourse with him; that she remonstrated, and he begged her until she gave in and had an act of sexual intercourse with him on the couch in the kitchen; that defendant had been home about five min-

utes before the act was commenced; that her brother Charles was at home when defendant arrived there on that day but he was not in the trailer; that on that occasion she did not see defendant's penis; that defendant had another act of sexual intercourse with her on the same couch about two weeks before the act just mentioned, but she did not know what time of day it was when that act occurred or whether it occurred before or after dark; that he had had intercourse with her many times since she was eleven or twelve years of age—"sometimes every two or three days; sometimes it would be a month, or every week; any time he felt like it"; that she did not complain to anyone, except defendant, about the acts of intercourse; that there was constant quarreling and fighting between her and defendant; that in California it was practically one continuous quarrel and she had become more and more disgusted and angry with him; that in the evening of February 14, 1944, she, her mother, and defendant had been to a picture show, and a quarrel, relating in part to the purchase of a war bond, started among them while they were in the theater; and that after they returned to the trailer the quarrel continued and her mother and defendant had a fight, and her mother called the police and had him arrested upon a charge of disturbing the peace.

At a former trial of defendant the prosecutrix testified that she was quite certain that defendant arrived home "after six" o'clock on the day of the alleged offense which occurred "around" February 1st, and that when he arrived home on that day it was "five after six." At the preliminary hearing she testified, as to the act of intercourse of February 1st, that defendant had been home about ten or fifteen minutes before the act took place; that her brother was in when defendant came home, but he was outdoors afterward; that defendant came in and talked to her brother and then told him to go out and play; and that she did see defendant's penis.

Defendant's wife testified in part that many times over a period of two or three years before they separated in 1942, defendant had put his hands under Martha's dress and on her breasts; that she (wife) and defendant had had many quarrels about such conduct by defendant; that their married life was almost "constantly a matter of bickering and battling"; that on one occasion in Michigan, when defendant was drunk, he proposed an act of intercourse with Martha,

and she (wife) told defendant that if she ever found out that he had done that to her she would have him thrown in jail; that Martha had never told her that she had had intercourse with defendant; and that Martha had told her that she (Martha) had a deep dislike and hatred toward defendant.

Charles, the brother of the prosecutrix, testified that he had seen defendant place his hands on Martha's breasts many times.

A physician testified that she examined the prosecutrix about February 16, 1944, and found the hymen ruptured and the vagina dilated to admit two fingers, but it was not a recent rupture.

A police officer testified that defendant said he had not had sexual intercourse with the prosecutrix; and that defendant, in response to a question as to whether he had placed his hands on her, said he had ''held her on his lap several times and would take hold of her breasts just to tease her.''

Defendant testified that he had never had sexual intercourse with the prosecutrix; that he had touched her breasts when he put his arms around her, but he had never fondled her breasts; that he and his wife had had many quarrels; that on various occasions he had disciplined Martha and had slapped her, and she had resented it; that he had disciplined Charles on various occasions, and during the period from January 15th to the early part of February, 1944, he had required that Charles stay in the trailer from the time he returned from school until the defendant came home; that his wife had told him on numerous occasions that she would put him in the penitentiary; that after he had been arrested she said to him, ''I want to see you in the penitentiary''; that he was arrested on February 14, 1944, on a charge of disturbing the peace, and on the next day he was arrested on a morals charge, and on the next day thereafter that charge was changed to a charge of rape.

The cautionary instruction requested by defendant and refused by the court was a proper instruction, but it was covered by other instructions which were given. The requested instruction was: ''By reason of the fact that charges of the nature involved in this case can easily be made and are often difficult to disprove, I instruct you that it is your duty to examine with caution the testimony of the prosecuting witness.

The fact that the charge here made, however, is one difficult to disprove should not deter you from rendering a verdict of guilty in the event that you are convinced by the evidence beyond a reasonable doubt that the defendant is guilty as charged.''

While the jury was being impaneled, counsel for defendant asked the court ''to instruct the jury on the precautionary instruction given in these cases.'' Thereupon the court gave the following instruction:

''In a case of this kind it is particularly difficult for a defendant to clear himself of a charge of this character. No charge can be more easily made, and none more difficult to disprove.

''From the nature of the case, the complaining witness and the defendant are the only witnesses. The law does not require in this character of case that the prosecuting witness be supported by another witness or other corroborating circumstances, but does require that you examine her testimony with caution.

''You are therefore to consider the matter as calmly, dispassionately, and deliberately as you would any other accusation, and you are to carefully and guardedly weigh, analyze, and consider the testimony against the defendant.'' (It appears that jurors who were so instructed were sworn to try the cause.)

At the close of the testimony and before the arguments were made the court instructed the jury and gave the same instruction, above quoted, except that it omitted therefrom the first six words, namely, ''In a case of this kind.'' Appellant does not assert that the first two paragraphs of said instruction were erroneous, but contends that a part of the language of the third paragraph thereof, namely, ''You are therefore to consider the matter as calmly, dispassionately, and deliberately as you would any other accusation,'' was erroneous, misleading, and in conflict with the language of the first two paragraphs. His argument is ''that cautionary instructions such as are required to be given in statutory rape cases have no place in trials concerning other alleged offenses,'' and that the jury was told, in one part of the instruction, that from the nature of the case it should examine the testimony of the prosecutrix with caution, and, in another part thereof, it was told to consider the matter as it would any other case. In

other words, his argument is that the jury was first told to consider her testimony with caution, and then was told not to so consider it. In the case of *People* v. *Webster*, 36 Cal. App. 540 [172 P. 768], wherein the charge was statutory rape, the court held that a cautionary instruction requested by defendant might well have been given, but said further (p. 541) : ''[W]e are satisfied that the trial court fully covered the points involved therein when it instructed the jury *to consider the matter 'calmly, dispassionately, and deliberately,' as they would any other accusation,* and that they were 'to be very careful in such case,' and should *'carefully and guardedly weigh, analyze, and consider the testimony against the defendant.' ''* (Italics added.) It is to be noted that the language in said instruction in that case was practically the same as the language of the third paragraph of the instruction herein. The language of the third paragraph herein was to the effect that the jurors should be as calm, dispassionate and deliberate in considering this accusation as they would be in any other accusation, and that in addition thereto they should carefully and guardedly weigh, analyze and consider all the testimony presented against the defendant. The direction or part of the third paragraph criticized by appellant (that the jurors should consider the matter as calmly, dispassionately, and deliberately as it would consider any other accusation) was given in conjunction with the direction immediately following it, viz., that it should carefully and guardedly weigh, analyze and consider the testimony against the defendant. Those two directions must be considered together. As stated in *People* v. *Webster, supra,* in referring to language similar to that of said third paragraph, the language of the third paragraph herein covered the points required in a cautionary instruction. The third paragraph was in itself a cautionary instruction and was not in conflict with the first two paragraphs, which admittedly constituted a proper cautionary instruction as to the testimony of the prosecutrix. Apparently, the first two paragraphs were based upon the instruction in *People* v. *Adams,* 14 Cal.2d 154, 164 [93 P.2d 146]. There was evidence herein to the effect that the prosecutrix, her mother, and her brother were actuated in their testimony by animosity toward the defendant. It was to the advantage of the defendant that the jury was instructed in the third paragraph that, in addition to the usual deliberateness required in

cases generally, all the testimony presented against the defendant (not only the testimony of the prosecutrix) should be carefully and guardedly weighed. The whole instruction met the requirements set forth in *People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367], wherein the court said at page 889 : "The defendant is entitled to have the jurors informed that the charges made against him are 'easily made and difficult to disprove' and that 'the testimony of the prosecuting witness should be examined with caution.' "

■ At the conclusion of the arguments, the court gave certain oral instructions to the jury. Appellant asserts that prejudicial error was committed in giving oral instructions without a stipulation therefor, and cites section 1127 of the Penal Code in support of his contention. That section provides that "All instructions given . . . shall be in writing, unless both parties request the giving of an oral instruction, or consent thereto." It also provides that "If the instructions are given orally, they must be taken down by the phonographic reporter." The oral instructions were taken down by the reporter. In *People* v. *Mack,* 115 Cal.App. 588 [2 P.2d 209], wherein a similar contention was made, the court said at page 590 : "The statute authorizes such instructions to be given to the jury in a criminal case, if taken down by the phonographic reporter." (See, also, *People* v. *Perez,* 19 Cal.App.2d 472, 478 [65 P.2d 1319].) It was not error to instruct the jury orally without a stipulation therefor.

■ Appellant contends that the court erred prejudicially in giving the following oral instruction after the arguments :

"Considerable has been said in the argument about the fact that it is the girl's testimony alone that tells the story of the acts claimed in this case. I again call your attention to the instructions that I have twice given you :

"From the nature of the case, the complaining witness and the defendant are usually the only witnesses. The law does not require in this character of case that the prosecuting witness be supported by another witness or other corroborating circumstances, but does require that you examine her testimony with caution.

"Not with great caution, but with caution.

"You are therefore to consider the matter as calmly, dispassionately, and deliberately as you would any other accusa-

tion, and you are to carefully and guardedly weigh, analyze, and consider the testimony against the defendant.''

Appellant asserts the court in instructing the jury to examine the testimony of the prosecutrix with caution, ''Not with great caution, but with caution,'' in effect told the jury to use only slight caution in scrutinizing the testimony of the prosecutrix. The defendant was entitled to a cautionary instruction. Even though the prosecutrix was not of extremely tender years and even though there was some corroboration of her testimony, the background of years of quarreling and fighting between her and defendant, her deep hatred of him, the background of years of quarreling and fighting between her mother and defendant, and her mother's long-continued avengeful attitude toward him were such that a cautionary instruction was required in order to carefully protect the rights of defendant. The court gave a proper cautionary instruction at the beginning of the trial and repeated it just before the arguments. After the arguments, however, the court gave the instruction again except that it inserted therein, after the admonition that the law requires ''that you examine her testimony with caution,'' the additional phrase, ''Not with great caution, but with caution.'' Where a cautionary instruction is required, it has been held that an admonition that the jury should examine the testimony of the prosecutrix with caution was proper. (See *People* v. *Putnam,* 20 Cal.2d 885, 889 [129 P.2d 367] ; *People* v. *Lucas,* 16 Cal.2d 178, 181-182 [105 P.2d 102, 130 A.L.R. 1485] ; *People* v. *Adams,* 14 Cal.2d 154, 164 [93 P.2d 146].) It has also been held that a proper cautionary instruction is that such testimony should be examined with utmost care. (See *People* v. *Scott,* 24 Cal.App. 440, 443 [141 P. 945] ; *People* v. *Vaughan,* 131 Cal.App. 265, 274 [21 P.2d 438].) In *People* v. *Scott,* just cited, it was said at page 443: ''For reasons readily suggested, though, it is entirely proper for the court to caution the jury to weigh the testimony of the prosecutrix with the utmost care that no wrong be done to the defendant.'' Although, under the authority of some reported cases, the defendant might have proposed an instruction that utmost or great caution be exercised in examining the testimony of the prosecutrix, his proposed cautionary instruction did not include an admonition that the jury should use utmost or great caution, but it did state that

it should examine such testimony with caution. Defendant asserts in effect that although, under some authorities, he would have been entitled to an instruction that utmost or great caution be used, he was willing to have the jury admonished that it should examine her testimony with caution. He insists that irrespective of whether he was entitled to an instruction that the jury should use the highest standard of care, he was entitled to a cautionary instruction which stated that the jury should exercise caution, and which placed no limitation upon the quantum of caution to be exercised by the jury. His argument is that the instruction that the jury should examine the testimony of the prosecutrix with caution "Not with great caution, but with caution," impliedly told the jury to use only slight caution and that the matter of examining the testimony of the prosecutrix was only of casual concern. The outcome of the trial depended upon whether the jury believed the prosecutrix or believed the defendant. Her testimony concerning the alleged act of January 25, 1944, was uncertain as to the day of the month, the day of the week, and the time of day—even as to whether it was daytime or nighttime—when it occurred. She made contradictory statements as to the time of day when the other alleged act occurred, testifying on the former trial that she was quite certain that it was after 6 o'clock, and in the present trial that she was not sure but "I know it was about 10 minutes to six o'clock." She made other contradictory statements concerning whether her brother was in the trailer when the defendant came home, and whether she saw a certain part of defendant's body. Her testimony that defendant had had many acts of intercourse with her since she was about twelve years of age—sometimes every two or three days, but that she had not complained to her mother of the bestial treatment inflicted upon her by defendant is almost beyond belief—especially in view of the animosity of Martha and her mother toward the defendant, and in view of the further fact that she had had ample opportunity to make complaint to her mother, without any fear of the defendant, when he was living separate and apart from the rest of the family. It is unnatural, to say the least, that a young girl should fail to report to her mother repeated violations of her body over a period of years. The corroborative evidence in this case was circumstantial. Her mother's testimony, by way of corroboration, was to be considered in connection with her expressed desire for revenge against defen-

dant. The testimony of her thirteen-year-old brother was to be viewed in connection with the punishment and discipline defendant had given him. The record shows that there had been a former trial of this case but it does not show the outcome of it; however, a fair assumption is that the jury disagreed. It was a close question as to whether the testimony of the prosecutrix should have been accepted or rejected. In *People* v. *Putnam, supra,* 20 Cal.2d 885, it was said at page 891: "It has been long recognized that there is no class of prosecutions 'attended with so much danger or which afford so ample an opportunity for the free play of malice or private vengeance.' " In a case of this kind, owing to the disadvantage in which a defendant is placed, it was stated in *People* v. *Baldwin,* 117 Cal. 244, at page 249 [49 P. 186], that "he should be given the full measure of every legal right in an endeavor to maintain his innocence." The use of the words, "Not with great caution," in the questioned instruction detracted materially from the right of defendant to have an instruction given that the testimony of the prosecutrix should be examined with caution. The instructions which were in proper form were definitely qualified by the later instruction. The words interpolated by the court signified that there were degrees of caution within the meaning of the word "caution" as it was used in the two preceding cautionary instructions and in the questioned instruction, and those words also signified that there was a limitation as to the degree of caution the jury should use in considering the testimony of the prosecutrix. By reason of those words the jury might reasonably have concluded that in the opinion of the judge even a slight degree of caution on its part would be sufficient. The defendant was entitled to an instruction that did not place a limitation upon the quantum of caution the jury should exercise. The use of the phrase, "Not with great caution," is equivalent to saying "without great caution," and it was prejudicial error to instruct the jurors in effect that they should examine the testimony of the prosecutrix without great caution.

The judgment and the order denying the motion for a new trial are reversed.

Desmond, P. J., and Shinn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 28, 1945.